IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**Donald Lempar**, TDCJ # 1284244, Huntsville Unit, §
815 12th Street, Huntsville, Texas 77348 §
<u>Plaintiff</u> §
§
V. §  Cause No._____
§  (Jury Trial Demanded)
**Brad Livingston**, Exec. Director, T.D.C.J §
P.O. Box 99, Huntsville, Texas 77342, In §
his Official Capacity; §
§
**Allen Hightower**, Exec. Director, Correctional §
Managed Health Care Committee, First National §
Bank Building, 1300 11th Street Suite 415, §
Huntsville, Texas 77340, in his official and §
individual capacity; §
§
**Glenda Adams**, M.D., North Region Medical Dir., §
U.T.M.B.---C.M.H.C. Division, 3009 A Hwy. 30 §
West, Huntsville, Texas 77340, in her individual §
capacity; §
§
**Bobby Vincent**, Huntsville Dist, Medical Dir., §
Estelle Unit RMF, 264 FM 3478, Huntsville, §
Texas, 77320, in his individual capacity; §
§
**Myra Walker**, Chief of the Office of Professional §
Services, T.D.C.J. Health Services, 3009 A Hwy. §
30 West, Huntsville, Texas 77340, in her indi- §
vidual capacity; §
§
**Guy Smith**, Office of Professional Services, §
T.D.C.J. Health Services, 3009 A Hwy. 30 West, §
Huntsville, Texas 77340, in his individual §
capacity; §
§
**Owen Murray**, Vice President, Univ. of Texas §
Medical Branch--Correctional Managed Health §
Care Division, 3009 A Hwy. 30 West, Huntsville, §
Texas 77340, in his Official and Individual §
capacity; §
§
**Sonie Mangum**, Practice Mgr., Huntsville Unit, §
U.T.M.B.---C.M.H.C. Div., 815 12th Street, §
Huntsville, Texas 77348, in her individual §
capacity; §
§
**Robert Dalecki**, Practice Mgr., Huntsville Unit, §
U.T.M.B.---C.M.H.C. Div., 815 12th Street, §
Huntsville, Texas 77348, in his individual §
capacity; §

United States Courts
Southern District of Texas
FILED

AUG 1 9 2010

Clerk of Court

-1-

**Jamie Williams**, Practice Mgr., Estelle Unit, §
U.T.M.B.--C.M.H.C. Div., Estelle Unit, 264 FM §
3478, Huntsville, Texas 77320, in her indi- §
vidual capacity; §
§
**Ernestine Julye**, Primary Care Provider, Estelle §
and Huntsville Units, U.T.M.B.--C.M.H.C. Div., §
Huntsville Unit, 815 12th Street, Huntsville, §
Texas 77348, in her individual capacity; §
§
**Dennis Gore**, General Surgeon, U.T.M.B. at §
Galveston, 301 University Blvd., Galveston, §
Texas 77555-5302, in his individual capacity; §
§
**Valerie Bauer**, Colon/Rectal Surgeon, U.T.M.B. §
at Galveston, 301 University Blvd., Galveston, §
Texas 77555-5302, in her individual capacity; §
§
**Intern Garza**, Surgical Intern, U.T.M.B. at §
Galveston, 301 University Blvd., Galveston, §
Texas 77555-5302, in her individual capacity; §
§
**Katherine Pearson**, Nurse Practitioner, Estelle §
Unit, U.T.M.B--C.M.H.C. Div., Estelle Unit RMF, §
264 FM 3478, Huntsville, Texas  77320, in her §
individual capacity; §
§
**D. A. Ruby**, Nurse Practitioner, Huntsville Unit,§
U.T.M.B.--C.M.H.C. Div., Huntsville Unit, 815 §
12th Street, Huntsville, Texas 77348, in her §
individual capacity; §
§
**Charles Nagel**, Physicians Assistant, Huntsville §
Unit, U.T.M.B.--C.M.H.C. Div., Huntsville Unit, §
815 12th Street, Huntsville, Texas 77348, in his §
individual capacity; §
§
**Cheryl Egan**, Physicians Assistant, Beto I Unit, §
U.T.M.B.--C.M.H.C. Div., Beto I Unit, 1391 FM §
3328, Tennessee Colony, Texas 75880, in her §
individual capacity; §
§
**Lester Findley**, Nurse, Estelle Unit, U.T.M.B-- §
C.M.H.C. Div., Estelle Unit, 264 FM 3478, §
Huntsville, Texas 77320, in his individual §
capacity; §
§
**Lisa Horton**, Nurse, Estelle Unit, U.T.M.B.-- §
C.M.H.C. Div., Estelle Unit, 264 FM 3478, §
Huntsville, Texas  77320, in her individual §
capacity; §
§
§

**Martin Oakley**, Nurse, U.T.M.B.——C.M.H.C Div., §
Estelle Unit, 264 FM 3478, Huntsville, Texas §
77320, in his individual capacity; §
§
**Carolyn Hicks**, Nurse, Huntsville Unit, U.T.M.B. §
——C.M.H.C. Div., 815 12th Street, Huntsville, §
Texas 77348, in her individual capacity; §
§
**Tsung-Lin Roger Tsai**, Resident Doctor, U.T.M.B. §
at Galveston, 301 University Blvd., Galveston, §
Texas 77555-5302, in his individual capacity; §
§
**Sergeant Donna Clement**, Security Officer, T.D.C §
J. Hospital Galveston Unit, P.O. Box 48, Sub- §
Station 1, Galveston, Texas 77555, in her §
individual capacity. §
                       **Defendants** §

## COMPLAINT FOR MONEY DAMAGES AND INJUNCTION
### (JURY TRIAL DEMANDED)

    **Comes Now**, Plaintiff, Donald Lempar, TDCJ# 1284244, Pro-Se, Pursuant to 42 U.S.C. §1983 and brings this suit to challenge the violation of his 8th and 14th Amendment rights to the U.S. Constitution by the above named Defendants. Plaintiff has suffered open-draining-bleeding wounds for 2 years without resolve and has no other legal remedy.

### I. PREVIOUS LAWSUITS

   1.Plaintiff has not filed any other State or Federal Lawsuit relating to his imprisonment.

### II. PLACE OF CONFINEMENT

   **2.A.** Plaintiff is currently incarcerated at the Huntsville Unit of the Texas Department of Criminal Justice.

### B. Jurisdiction

   **3.** This Suit is brought under the 8th and 14th Amendments to the U.S. constitution, which are enforced through 42 U.S.C. § 1983. This Court has Jurisdiction over the Plaintiff's constitutional claim under 28 U.S.C. §§ 1331, 1343(3), and 1343(4). Plaintiff also seeks Declaratory Judgement pursuant to 28 U.S.C. §2201.

### C. Venue

   **4.** The Southern District of Houston is an appropriate Venue for action

-3-

under 28 U.S.C. § 1391(b)(1), because the Defendants in their official capacity reside in this district.

    **5.** The Southern District of Houston is also an appropriate Venue under 28 U.S.C. 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claims occurred" in this district.

### III. EXHAUSTION OF GRIEVANCE PROCEDURES

    **6.** Plaintiff has exhausted the Step 1 and Step 2 Grievance procedures for each issue addressed in this complaint with the exception of three grievances that T.D.C.J has refused to process. (See Grievances---Exhibit 1, Pgs 1-74). As to the three unprocessed grievances, Plaintiff originally filed them on the Date of the incident (4-16-09), filed them again to M. Dawson via truck-mail envelope, and tried again upon return to the Huntsville Unit. All three submissions were either destroyed, lost, or denied. Plaintiff then contacted the Office of the Inspector General for an investigation without success. (See--Original Copies and correspondence trying to resolve issue---Exhibit 2, Pgs 1-9). Plaintiff asserts that he has exhausted his administrative remedies regarding the three unprocessed grievances.

### IV. PARTIES TO THIS SUIT

**A. Plaintiff:**

    **7. Donald Lempar**, TDCJ # 1284244, Huntsville Unit, Huntsville, Texas 77348

**B. Defendants:**

    **8. Brad Livingston**, Executive Director, Texas Department of Criminal Justice, is sued in his official capacity as the individual that is responsible for the supervision and control of the Texas prison system. He is also responsible for the Systemic Failure to provide necessary medical care and Plaintiff seeks injunctive relief from this defendant. P.O. Box 99, Huntsville, Texas 77342.

    **9. Allen Hightower**, Executive Director, Correctional Managed Health Care Committee, is sued in his official and individual capacity as responsible for all prison Health Care including quality control. He was personally aware of the Systemic Failure, as he stated in numerous press releases, but took no affirmative action resulting in Deliberate Indifference. His inaction caused extreme delays in ordered treatment resulting in unnecessary pain and suffering. First National Bank Building, 1300 11th Street, Suite 415, Huntsville, Texas, 77340.

10. **Glenda Adams**, North Division Medical Director, University of Texas Med-ical Branch-C.M.H.C. Div. is sued in her individual capacity as responsible for Health Care in the Northern District. She was aware and personally involved in Plaintiff's case, but became Deliberately Indifferent when she took no action to resolve the situation. Her inaction caused an excessive delay in ordered treatment resulting in a yet unrepaired condition. The delays in treatment and failure to follow orders of the surgical specialists, caused unnecessary pain and suffering over a 2½ year period. 3009 A Hwy. 30 West, Huntsville, Texas 77340.

11. **Bobby Vincent**, Huntsville District Medical Director, U.T.M.B.--C.M.H.C. Div., is sued in his individual capacity as responsible for Health Care provided by U.T.M.B. in the Huntsville Area. He was personally aware and personally involved in Plaintiff's case, but became Deliberately Indifferent when he took no action to resolve the situation. In addition, He falsified letters to family members stating Plaintiff had undergone procedures that were not in medical records. His inaction resulted in continued delay in treatment and resulted in unnecessary pain and suffering. Estelle Unit, 264 FM 3478, Huntsville, Texas 77320.

12. **Myra Walker**, Chief, Office of Professional Services, Texas Department of Criminal Justice Health Services, is sued in her individual capacity as an overseer to the Step 2 Grievance Process. She has been personally involved with numerous erroneous Step 2 Responses and became Deliberately Indifferent when she took no action to address the delays in doctor ordered treatment. In addition, she falsified numerous responses to attempt to cover up the failed and delayed medical care. Her canned responses and failure to act caused Plaintiff unnecessary pain and suffering which could have been prevented. 3009 A Hwy. 30 West, Huntsville, Texas 77340

13. **Guy Smith**, Grievance Investigator, Texas Department of Criminal Justice Health Services, is sued in his individual capacity as a Step 2 Grievance investigator. He was personally involved in Plaintiff's Step 2 Grievances and became Deliberately Indifferent when he took no action to resolve the delays in doctor ordered medical treatment. His canned responses and failure to act caused Plaintiff to suffer unnecessary pain and suffering, as well as an unrepairable condition. 3009 A Hwy. 30 West, Huntsville, Texas 77340

14. **Owen Murray**, Vice President, U.T.M.B.--Correctional Managed Health Care Division, is sued in his Official and individual capacity for failing to fulfill contractual obligations and for Deliberate Indifference in failing to provide ordered medical care. He was Personally aware and personally involved in Plaintiff's case but took no action to alleviate the situation. His inaction resulted in unnecessary Pain and Suffering and a yet unrepaired condition. Plaintiff also seeks injunctive relief from this defendant. 3009 A Hwy. 30 West, Huntsville, Texas 77340.

15. **Sonie Mangum**, Former Practice Manager, Huntsville Unit, U.T.M.B.--C.M.H.C. Div.,is sued in her individual capacity for Deliberate Indifference in falsifying Step 1 Grievances to cover up failed care, training staff to have nurses triage patients, the systemic failure on the Unit Level to judge infection by fever alone, and for refusing to take any action to get Plaintiff the ordered medical care. Her actions further delayed

-5-

surgical treatment rendering a yet unrepairable condition and excessive pain and suffering. Huntsville Unit, 815 12th Street, Huntsville, Texas 77348.

16. **Robert Dalecki**, Practice Manager, Huntsville Unit, U.T.M.B.--C.M.H.C. Div., is sued in his individual capacity for Deliberate Indifference in providing erroneous Step 1 Responses stating it's okay for Unit Staff to violate Orders of Surgical Specialists, Unit policy relying on infection as only accompanied by a fever, Unit practice of nurses triaging patients even when unqualified to do so, and for not allowing Plaintiff to receive Sitz baths. Failure to properly train and super-vise his subordinates, failure to take action on Plaintiff's Step 1 grievances, and failure to enforce orders of surgical specialists, has caused unnecessary pain and suffering and is contributing to the failed care. Huntsville Unit, 815 12th Street, Huntsville, Texas 77348.

17. **Jamie Williams**, Practice Manager, Estelle Unit, U.T.M.B.--C.M.H.C. Div., is sued in her individual capacity as overseer to the Medical Care on the Estelle Unit. She was notified of numerous acts of Deliberate Indifference, upon Step 1 review, and became Deliberately Indifferent herself when she failed to take any action. She merely provided canned responses, failed to supervise her subordinates, and was responsible for the failure to "chain-In" Plaintiff upon arrival to the Estelle Unit. Her failure to act contributed to the necessity of a Second round of surgery that might otherwise have been unnecessary. Estelle Unit, 264 FM 3478, Huntsville, Texas 77320.

18. **Ernestine Julye**, Primary Care Provider, U.T.M.B.--C.M.H.C. Div., is sued in her individual capacity as the supervising physician for the Huntsville and Estelle Units. She has engaged in numerous acts of Deliberate Indifference including **failure** to supervise her subordinates, refusal to provide hospitalization for a life-threatening condition, refusal to follow orders of surgical specialists, discharging Plaintiff to general prison population with open-bleeding wounds, forcing the Plaintiff to work in a textile mill with open-bleeding wounds, and an act of retaliation in transfering Plaintiff to another region 2 weeks before Christmas 2009. Her actions/inaction has resulted in tremendous suffering and the failure of two surgeries. Huntsville Unit, 815 12th Street, Huntsville, Texas  77348.

19. **Dennis Gore**, General Surgeon, U.T.M.B. at Galveston, is sued in his individual capacity for Deliberate Indifference in refusing to provide ordered medical treatment on Jan 20th, 2009 after an already five month delay. His refusal to provide treatment caused unnecessary pain and suffering. U.T.M.B. at Galveston, 301 University Blvd., Galveston, Texas 77555-5302

20. **Valerie Bauer**, Colon/Rectal Surgeon, U.T.M.B. at Galveston, is sued in her individual capacity for Deliberate Indifference in refusing to provide necessary treatment that she herself stated that plaintiff needed. Her refusal to provide treatment has left plaintiff with open-bleeding wounds resulting in unnecessary pain and suffering. U.T.M.B. at Galves-ton, 301 University Blvd., Galveston, Texas 77555-5302.

21. **Intern Garza**, Surgical Intern, U.T.M.B at Galveston, is sued in her individual capacity for the Deliberate Indifference in falsifying medical documentation. Intern Garza stated that Plaintiff refused care without any type of written or verbal refusal being made. Her actions resulted in continued delay in treatment resulting in unnecessary pain and suffering. U.T.M.B. at Galveston, 301 University Blvd., Galveston, Texas 77555-5302;

22. **Katherine Pearson N.P.**, nurse practitioner, U.T.M.B.--C.M.H.C. Div., Estelle Unit, is sued in her individual capacity for Deliberate Indifference in refusing to follow orders of surgical specialists which was a cause for failed surgery, for erroneously overriding orders of the primary care physician, and for conspiring to have Plaintiff placed back into general population with open-bleeding wounds. Her actions caused unnecessary pain and suffering. Estelle Unit, 264 FM 3478, Huntsville, Texas 77320;

23. **D.A. Ruby N.P.**, nurse practitioner, U.T.M.B.--C.M.H.C. Div., Huntsville Unit, is sued in her individual capacity for Deliberate Indifference in refusing to follow orders of surgical specialists treating the Plaintiff. Her actions are resulting in increased pain and suffering from her refusal to allow ordered sitz baths. Huntsville Unit, 815 12th Street, Huntsville, Texas 77348;

24. **Charles Nagel**, Physicians assistant, U.T.M.B.--C.M.H.C. Div., Huntsville Unit, is sued in his individual capacity for Deliberate Indifference in refusing care necessary to treat a peri-rectal abcess resulting in a yet unrepairable condition. He would often be intoxicated on the job and would just ignore Plaintiff's complaints of pain and suffering. His failure to provide the treatment necessary to prevent the rupture of the abcess caused excessive and unnecessary pain and suffering which could have been prevented. Huntsville Unit, 815 12th Street, Huntsville, Texas 77348;

25. **Cheryl Egan**, physicians assistant, U.T.M.B.--C.M.H.C. Div., Beto I Unit, is sued in her individual capacity for the Deliberate Indifference that is associated with taking away Plaintiff's cane used as a walking aid, refusing to comply with orders from surgical specialists, and discharging Plaintiff from an Infirmary to general prison population again with open-bleeding wounds and a posterior midline fissure. As a result of her actions Plaintiff received an infection just days later. Her actions resulted in unnecessary pain and suffering. Beto I Unit, 1391 FM 3328, Tennessee Colony, Texas 75880;

26. **Lester Findley**, Nurse, U.T.M.B.--C.M.H.C. Div., Estelle Unit, is sued in his individual capacity for Deliberate Indifference in failing to perform doctor ordered bandage changes and for sexually harrassing the Plaintiff during one of those refusals. His actions caused unnecessary pain and suffering and contributed to the formation of a cyst resulting in a second surgery. Estelle Unit, 264 FM 3478, Huntsville, Texas 77348;

27. **Lisa Horton**, Nurse, U.T.M.B.--C.M.H.C. Div., Estelle Unit, is sued in her individual capacity for the Deliberate Indifference in verbally and physically abusing Plaintiff during a doctor ordered bandage change. Her actions resulted in unnecessary pain and suffering. Plaintiff also

-7-

seeks Punitive damages from this defendant. Estelle Unit, 264 FM 3478, Huntsville, Texas 77320;

28. **Martin Oakley**, Nurse, U.T.M.B.--C.M.H.C. Div., Estelle Unit, is sued in his individual capacity for the Deliberate Indifference in refusing to perform Doctor ordered bandage changes. His actions caused unnecessary pain and suffering and contributed to the need for a second round of surgery. Estelle Unit, 264 FM 3478, Huntsville, Texas 77320;

29. **Carolyn Hicks**, Nurse, U.T.M.B.--C.M.H.C. Div., Huntsville Unit, is sued in her individual capacity for the Deliberate Indifference in refusing to allow Plaintiff to see a Provider for a life-threatening abcess. Her actions resulted in the rupture of the abcess and an open-bleeding wound that has yet to be repaired. Huntsville Unit, 815 12th Street, Huntsville, Texas 77348;

30. **Donna Clement,** Correctional Officer, T.D.C.J. Hospital Galveston Unit, is sued in her individual capacity for Deliberate Indifference in forcing Plaintiff to ride a bus directly after surgery while chained to another Offender. She refused to allow Plaintiff to contact Medical Staff for any type of pass for single cuff or for cushions to protect surgical area. Plaintiff was forced to sit directly on the surgical wound for 3½ hours from her actions. Hospital Galveston Unit, P.O. Box 48, Substation 1, Galveston, Texas 77555;

31. **Tsung-Lin Roger Tsai**, Resident Physician, U.T.M.B at Galveston, is sued in his individual capacity for his Deliberate Indifference in discharging Plaintiff to a T.D.C.J. holding cell where he could not receive newly ordered medical care and for not providing some form of cushion to use during transport. His actions caused tremendous unnecessary pain and suffering. U.T.M.B. at Galveston, 301 University Blvd., Galveston, Texas, 77555-5302.

## V. STATEMENT OF THE CLAIM

### A. Factual Allegations:

32. In June, 2004, Plaintiff was falsely convicted and sentenced to 20 years of imprisonment. He arrived at the Huntsville Unit in March 2007.

33. As to the claim in paragraph 32, Plaintiff has post conviction litigation pending. This fact is relevant to this cause because the nature of the offense has been used verbally to excuse failed care and because Plaintiff has been hampered in obtaining this relief from the delay in treatment. ( See Exhibit 9 Pgs. 1-6).

34. Plaintiff has suffered open-bleeding wounds from Sept. 1st, 2008 to the present and at no time have these wounds been healed. Plaintiff also has an untreated Posterior Midline Fissure. (See Medical Records Exhibit 12, Pgs. 31-56, and 117-140, and Exhibit 11 Pgs 80-81)(see also Affidavits of Plaintiff and Mark Ladish, Exhibit 5, Pgs 1-4 and Exhibit 4 Pgs 1-2).

35. As to the claim in paragraph 34, Plaintiff has had to have bandage changes twice daily during this entire time, except when refused, and is now being

forced to do them himself. (See Medical Records Exhibit 11 Pgs 80-81 and Exhibit 12 Pgs 31-56, 109, and 117-140) (See Also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

36. On Feb. 12th, 2008, Plaintiff arrived at the Huntsville Unit infirmary to see Charles Nagel P.A. for severe rectal burning during and after bowel movements accompanied by testicular pain. (See Medical Record Exhibit 12 Pg 5).

37. As to the claim in Paragraph 36, Charles Nagel P.A. smelled like alcohol, stated the symptoms could not possibly be related, and he refused treatment besides Pepto-Bismol. (See Medical Record Exhibit 12 Pg 5).

38. As Plaintiff's condition worsened into an Abcess between June 18th, and August 18th, 2008, Charles Nagel P.A. continued to refuse any generally accepted standard medical treatment to diagnose or drain the abcess other than topical cream. (See Medical Records Exhibit 12 Pgs 6-7).

39. On Aug. 19th, 2008, Plaintiff's condition continued to deteriorate and he arrived at the infirmary to see a provider, however, he was refused by nurse Carolyn Hicks L.V.N.

40. As to the claim in paragraph 39, Carolyn Hicks diagnosed the abcess herself as a "boil" and spoke to Charles Nagel P.A. who prescribed Bactrim. (See Medical Report Exhibit 12 Pg 10).

41. On Sept. 1st, 2008, continued refusal to provide generally accepted standard medical care resulted in the abcess rupturing into an open-bleeding wound. (See Medical Record Exhibit 12 Pg 11) (See also Affidavit of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

42. As to the claim in paragraph 41, Charles Nagel P.A. and his supervising physician Ernestine Julye M.D. continued to refuse hospitalization while only ordering a wound culture and antibiotic. (See Medical Record, Exhibit 12 Pg 11).

43. As to the claim in paragraph 42, the wound culture taken on Sept 1st, 2008 confirmed Plaintiff was infected with M.R.S.A. Staph. At this time defendants Charles Nagel P.A. and Ernestine Julye M.D. knew of and disregarded an excessive risk to the Plaintiff's health and safety. (See Culture Reports, Exhibit 12 Pgs 12-14).

44. On Sept. 7th, 2008, Charles Nagel P.A. refused to refill antibiotics and continued to refuse any adequate pain relief for the notably painful wound. He denied any further treatment despite the open-bleeding wound and the M.R.S.A Staph infection. He stated, "I will do what I want to do." (See Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

45. On Sept. 9th, 2008, Plaintiff's condition continued to deteriorate due to the M.R.S.A. Staph not having any antibiotic fighting it. Plaintiff went to the infirmary and Ernestine Julye M.D. was present.

46. As to the claim in paragraph 45, Plaintiff's wound was bleeding badly, he

was having severe pain in his left buttock, left leg, and back. He was also experiencing Flu-Like illness accompanied with swollen glands under his chin. Intestinal Gas began to escape out of the external wound when passing gas. Defendant Ernestine Julye M.D. still refused hospitalization, referrals to a specialist, or proper pain relief. She provided only a shot of Ansef and prescribed another antibiotic. (See Medical Record, Exhibit 12 Pg 6) (See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

47. From Sept 9th thru Sept 22nd, 2008, Defendants Ernestine Julye M.D. and Charles Nagel P.A. continued to refuse pain medication outlined in standard medical journals, refused to provide hospitalization for a potentially life-threatening condition, and refused to provide any referrals to a specialist. (See Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

48. On Sept. 23rd, 2008, Plaintiff's condition continued to deteriorate into a "Peri-Rectal Fistula" as noted by Charles Nagel P.A. (See Medical Record, Exhibit 12 Pg 7).

49. As to the claim in paragraph 48, Plaintiff   was finally provided a referral after Charles Nagel P.A. noted gas comming out of wound and after a 7 month delay in providing any meaningful treatment. (See Medical Record, Exhibit 12 Pg 17).

50. On Oct. 8th, 2008, Plaintiff spoke to a Dr. Kuykendall over the Digital Medical Service (video conference). He stated that Plaintiff required prompt treatment and he submitted an expedited (30-day) referral for surgery. He refused to provide any pain relief or antibiotic. (See Medical Record, Exhibit 12 Pg 21)(See also Affidavit  of plaintiff, Exhibit 5 Pgs 1-4).

51. As to the claim in paragraph 50, Dr. Kuykendall inquired to see if Plaintiff wanted to transfer units and Plaintiff explained reasoning for wanting to remain on his assigned unit. Dr. Kuykendall only stated that a unit transfer "might be necessary" and never stated that Plaintiff would not receive any treatment. (See Exhibit 12 Pg 21).

52. As to the claim in paragraph 51, T.D.C.J. Officials immediately began using Plaintiff's wanting to stay on his unit as some sort of refusal, however, T.D.C.J. offenders cannot refuse a unit transfer if necessary. (See Medical Record, Exhibit 12 Pg 21).

53. On Oct. 8th, 2008, Plaintiff was informed that Hospital Galveston was closed and could not provide the necessary surgical treatment. Plaintiff submitted Emergency Step 1 and Step 2 Grievances. (See Grievances, Exhibit 1 Pgs 1-2 and Press Releases, Exhibit 10 Pgs 3-4).

54. As to the claim in paragraph 53, Defendant Sonie Mangum falsified the Step 1 Grievance response stating that Plaintiff had a pending appointment when she was personally aware Plaintiff's appointment was cancelled. She was also aware that the Hospital was non-functional. (See Grievance, Exhibit 1 Pgs 1-2).

55. Between Oct. 10th and Oct. 19th, 2008, another hole opened up in the wound and it began to drain blood and puss from both openings.

56. On Oct. 20th, 21st, 29th, 31st, and on Nov. 1st and 2nd, 2008, Plaintiff was
    denied bandage changes or the supplies necessary to perform them himself.
    Defendants Sonie Mangum, Charles Nagel P.A., and Ernestine Julye M.D. were
    aware of Plaintiff's need for bandage changes and his inability to get out
    of his cell due to the statewide lock-down. (See Grievance, Exhibit 1 Pgs
    3-4)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4
    and Exhibit 4 Pgs 1-2).

57. As to the claim in paragraph 56, defendants took no action, in violation of
    policy, to ensure Plaintiff received the necessary care. Their Deliberate
    Indifference in failing to follow policy and provide necessary care, result-
    ed in unnecessary pain and suffering. (See Grievance, Exhibit 1 Pgs 3-4).

58. On Nov. 17th, 2008, Plaintiff was informed that his scheduled surgery date
    of Nov. 24th, 2008 had been cancelled in opposition to the Expedited (30-
    day) referral. This Deliberate Indifference in delaying ordered care, re-
    sulted in unnecessary pain and suffering. (See Grievance, Exhibit 1 Pgs 5-
    6)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and
    Exhibit 4 Pgs 1-2).

59. On Dec. 12th, 2008, Plaintiff found out that his second scheduled surgery
    date of Dec. 22nd, 2008 had been cancelled in opposition to the Expedited
    (30-day) referral. This Deliberate Indifference in delaying care for a
    second time, caused unnecessary pain and suffering. ( See Grievance, Exhibit
    1 Pgs 7-8)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs
    1-4 and Exhibit 4 Pgs 1-2).

60. On Dec. 15th, 2008, Plaintiff requested a photo of his wounds via I-60
    (request to official) and was refused on Dec. 22nd, 2008 stating, "this
    agency does not provide this type of service." Plaintiff requested the
    photo to provide to an outside expert evaluating his records.

61. Upon information and belief, the Huntsville Unit Infirmary has taken photos
    of a shingle case in Feb. 2010 despite refusal to visually document wounds
    of the Plaintiff.

62. On Dec. 22nd, 2008, all upper level T.D.C.J. and U.T.M.B. officials were
    notified of the failure to provide ordered care via First-Class and Cert-
    ified mail. (See Letters to officials, Exhibit 7 Pgs 1-5).

63. On Dec. 24th, 2008. a "Campaign of Harrassment" began depriving Plaintiff
    of any valid sleep. (See Grievance, Exhibit 1 Pg 9-10).

64. On Dec. 30th, 2008, Julia Lawson P.A. ordered wound cultures to be completed
    which were never done until March 6th, 2009. (See Grievance, Exhibit 1 Pgs
    11-12).

65. On Dec. 30th, 2008, Ernestine Julye M.D. made an Expedited (30-day) referral
    for Plaintiff to be sent to U.T. Tyler Hospital because of the continued
    delays in providing the necessary surgery. (See Medical Referral, Exhibit
    12 Pg 30).

66. As to the claim in paragraph 65, Ernestine Julye M.D.'s expedited referral
    was approved on Dec. 31st, 2008 proving a unit transfer was unnecessary to

-11-

receive treatment. This fact belied the assertions made by T.D.C.J. officials in their previous responses. (See Letters from Defendant's, Exhibit 8 Pgs 2-5).

67. As to the claim in paragraph 66, Plaintiff's surgical date was set for April 2009 despite the acceptance of the Expedited (30-day) referral to U.T. Tyler Hospital. (See Grievance, Exhibit 1 Pgs 5-6 and 15-16).

68. As to the claim in paragraph 67, Defendants Owen Murray and Allen Hightower are responsible for the systemic failure in refusing to provide the twice ordered, approved, and necessary treatment. (See Press Releases, Exhibit 10 Pgs 1-5).

69. On Jan. 8th, 2009, Plaintiff was again refused any viable antibiotic or pain relief to control the open-draining and tunneling wounds. (See Grievance, Exhibit 1 Pgs 13-14).

70. As to the claim in paragraph 69, the refusal to provide the necessary medication resulted in continued progression of the open wounds and unnecessary pain and suffering to the Plaintiff including pain in the left buttock, left leg, and back, as well as Flu-Like illness. (See Grievance, Exhibit 1 Pgs 13-14)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2)

71. On Jan 20th, 2009, Plaintiff was transported to Hospital Galveston where he was ultimately refused treatment by defendant Dennis Gore M.D. when Plaintiff asked about treatment options. This refusal to provide treatment after the already excessive delay was Deliberately Indifferent resulting in unnecessary pain and suffering. (See Medical Records, Exhibit 11 Pgs 50-51 and Grievance Exhibit 1 Pgs 17-18)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

72. As to the claim in paragraph 71, Intern Garza falsified medical record stating Plaintiff refused treatment when it was Dennis Gore M.D. that refused to treat Plaintiff, without any written or verbal refusal from the Plaintiff. (See Medical Record, Exhibit 11 Pgs 50-51 and Grievance, Exhibit 1 Pgs 17-18).

73. As to the claim in paragraph 72, at no time has Plaintiff signed a refusal or provided any verbal refusal to receive surgical treatment for his open-draining wound or fissure. (See Grievance, Exhibit 1 Pgs 17-18).

74. On Jan. 22nd, 2009, Nurse Robert Barley informed Plaintiff that Hospital Galveston records indicated that he had somehow refused treatment.

75. As to the claim in paragraph 74, Plaintiff informed all Huntsville Unit medical staff that he never refused any treatment nor was any type of written or verbal refusal presented or signed. (See Grievance, Exhibit 1 Pgs 17-18).

76. On Feb. 3rd, 2009, Ernestine Julye M.D. lodged a "Campaign of Harrassment" against Plaintiff by refusing to provide daily bandage changes necessary to absorb drainage and by changing order for bandage changes to every 2 to 3 days. Additionally, she refused antibiotics stating, "You cannot stay on them forever and they are causing a different problem." (See Grievance, Exhibit 1 Pgs 19-22).

77. As to the claim in paragraph 76, Plaintiff suffered increased pain in left buttock, left leg, and back accompanied with continued Flu-Like illness, all of which were ignored by defendants. Diagnostic testing performed April 3rd, 2009 and May 5th, 2009 later described the seriousness of Plaintiff's condition. (See Medical Record, Exhibit 11 Pgs 33-35 and Press Article, Exhibit 10 Pg 6--explaining a similar case)(See also Affidavits of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

78. On Feb. 6th, 2009, Plaintiff was informed by nursing staff that Julia Lawson P.A., Bobby Vincent M.D., and Ernestine Julye M.D. all refused to return the bandage changes to everyday due to the expense of supplies. (See Grievance, Exhibit 1 Pgs 19-20).

79. On Feb. 6th, 2009 at 3 pm, Robert Barley, under the direction of Ernestine Julye M.D., attempted to have Plaintiff sign a refusal form to cover up the falsified records from Hospital Galveston on Jan. 20th, 2009.

80. As to the claim in paragraph 79, Plaintiff stated that Dennis Gore M.D. was the one who refused treatment and that he was not signing any type of refusal to cover up the falsified records.

81. On Feb. 8th, 2009, Plaintiff was informed by nursing staff that the Gastoenterology appointment for a colonoscopy was cancelled and rescheduled for March 16, 2009. This delay in ordered care resulted is continued Deliberate Indifference resulting in unnecessary pain and suffering. Defendant's Owen Murray and Allen Hightower are responsible for the systemic failure in the continued delay of necessary treatment. (See Medical Record, Exhibit 11 Pgs 17-18)(See also Affidavit of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

82. On Feb. 9th, 2009 Plaintiff procured a letter from an outside Expert by the name of Michael Snyder M.D. Colon/Rectal Specialist who is also the Program Director for the U.T. Health Science Center in Houston, Texas. Dr. Snyder stated that Plaintiff was receiving "Suboptimal Care", that treatment to fix Plaintiff's condition was "not with antibiotics", and that the "expertise for managing what is truely a complex condition at the Anus is certainly not present in the present location to which he is receiving care." (See Letters from Expert, Exhibit 6 Pgs 1-3).

83. As to the claim in paragraph 82, this letter was provided to all T.D.C.J. and U.T.M.B. Medical Directors, Senator John Whitmire, and Governor Rick Perry's office. These officials could no longer downplay the seriousness of Plaintiff's condition nor the effect of the delays on recovery. (See Letters from Expert, Exhibit 6 Pgs 1-3).

84. On Feb. 12th, 2009, Plaintiff was approached by Sergeant Townsend, under the direction of Major Crowley, and told to pack his property because he was on Emergency Medical Transport. Plaintiff was not allowed to take any hygiene despite T.D.C.J. Administrative Directive 3.072 specifically allowing hygiene upon medical transport.

85. As to the claim in paragraph 84, Plaintiff began to fear for his life while knowing that he had been Ill for a year at the time of the transport.

86. On Feb. 13th, 2009, Plaintiff arrived at the G.I. Clinic at Hospital Galveston

and was informed by the Intern with no name-tag that he was Emergency trans-
ported because the Abcess was Life-Threatening. She was unaware that refusal
to provide necessary treatment had already resulted in the rupture of the
abcess six months prior. She noted Plaintiff's pain at a 7 on a scale of 1-
10, stated she would "be right back", and never returned. Plaintiff was sent
back to his unit with no treatment for a second time. (See Medical Record,
Exhibit 11 Pgs 48-49 and Grievance, Exhibit 1 Pgs 25-26).

87. On Feb. 14th thru March 1st, 2009, Plaintiff was held in medical transit at
the Byrd Unit as punishment for requiring medical care. During this time,
Plaintiff was denied access to his legal material, no recreation, he missed
college classes, was refused commissary privileges, and remained confined
in a cell 24/7. (See Grievance, Exhibit 1 Pgs 23-24).

88. As to the claim in paragraph 87, T.D.C.J. and U.T.M.B. often use this tactic
to manipulate offenders into refusing treatment and signing refusals for fear
of being placed in 24/7 confinement for weeks at a time. (See Grievance, Ex-
hibit 1 Pgs 23-24).

89. On March 6th, 2009, the wound culture ordered on Dec. 30th, 2008 was finally
done. The results returned on March 8th, 2009, showed M.R.S.A. Staph infect-
ion and Ecoli in Plaintiff's Blood.

90. As to the claim in paragraph 89, Charles Nagel P.A. informed nurse Charlene
Jordan R.N. to inform Plaintiff that he would not treat infections shown on
culture because it would require two antibiotics. This refusal to provide
obvious treatment for a serious medical need was not within acceptable stand-
ards of medical care and it caused unnecessary pain and suffering. the Delib-
erate Indifference in refusing treatment contributed to the seriousness of
Plaintiff's condition. (See Grievance, Exhibit 1 Pgs 37-38)(See also Affidav-
its of Plaintiff and Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

91. On March 12th, 2009, Plaintiff was informed that his colonoscopy scheduled
for March 16th, 2009 had again been delayed until the end of March. This de-
lay in ordered treatment continued to cause unnecessary pain and suffering.
(See Grievance, Exhibit 1 Pgs 27-28)(See also Affidavits of Plaintiff and
Mark Ladish, Exhibit 5 Pgs 1-4 and Exhibit 4 Pgs 1-2).

92. On March 31st, 2009 Plaintiff was seen by Valerie Bauer M.D., Colon/Rectal
surgeon, which was appointed after State officials contacted the T.D.C.J.
Medical Services Director upon receipt of the letter from Plaintiff's ex-
pert.

93. As to the claim in paragraph 92, Valerie Bauer M.D. informed Plaintiff that
she hoped he had only one Fistula instead of two from the delay in receiving
treatment. She also recorded all of Plaintiff's symptoms for the first time
since his condition started. (See Medical Record, Exhibit 11 Pgs 45-47).

94. From March 30th thru April 1st, 2009, Plaintiff was placed in an Ad-Seg Cell
on the 4th floor of Hospital Galveston unit where a "Campaign of Harrassment"
was lodged upon him by denying bandage changes, refusing to provide toilet
tissue, and refusing to provide the liquid diet ordered by valerie Bauer M.D.
to prepare for surgical procedures. (See Grievance, Exhibit 1 Pgs 29-30).

95. on March 31st, 2009, Defendant Sonie Mangum falsified a Step 1 Grievance by

-14-

stating that Plaintiff had refused treatment on Jan. 20th, 2009 for which
there was never any verbal or written refusal made by the Plaintiff. (See
Grievance, Exhibit 1 Pgs 19-20).

96. On April 2nd, 2009, Plaintiff underwent a colonoscopy which ruled out any
diseases which could have naturally contributed to Plaintiff's condition.
(See Medical Report, Exhibit 11 Pgs 36-37).

97. On April 3rd, 2009, Plaintiff underwent a surgical exam under anesthia in
which two very deep Sinus Tracts were found. One tract went up toward the
abdomen and could not be fully explored while the other went approximately
5" deep toward the rectal area. No communication was found using the limited
technique of using peroxide instead of a more advanced Fistulagram. The
tracts were debrided and the wound unroofed. It was apparent that the long
continued delays in treatment caused signifigant damage and could no longer
be excused by Defendants. (See Medical Report, Exhibit 11 Pgs 6-8 and Ex-
hibit 12 Pg 70).

98. On April 3rd, 2009, a CT-Scan was performed post surgery due to the inability
of Valerie Bauer M.D. to fully explore the upper Sinus Tract. This procedure
revealed even more extensive damage such as "Extensive Subcutaneous air in
the Perianal fat and Perineum extending to the Scrotum", "Possibility that
Fistula could connect with bladder", "air in bladder", and "Hepatic Steatosis"
possibly caused by extended use of antibiotics required to fight infection.
(See Ct-Scan Report, Exhibit 11 Pgs 34-35).

99. As to the claim in paragraph 98, the CT-Scan operator shoved a probe inside
Plaintiff's rectal area wihout using any lube and shoved some of the gauze
covering the surgical wound into Plaintiff's rectum. This resulted in severe
pain causing the Plaintiff to yell and scream at the student operator who
was obviously untrained in the use of the probe. Upon return to his room,
Plaintiff informed nursing which in turn called the on-call physician. The
on-call physician refused to render any assistance with the gauze. (See
Medical Report, Exhibit 11 Pgs 63-69).

100. On April 4th, 2009, Plaintiff was discharged to a holding cell where he did not
receive ordered Sitz Baths, Bandage Changes, or proper medication. (See Griev-
ance, Exhibit 1 Pgs 35-36).

101. As to the claim in paragraph 100, this erroneous discharge was the result
of orders from Defendant Tsung-Lin Roger Tsai M.D. and caused unnecessary
pain and suffering just one day after surgery. (See Grievance, Exhibit 1
Pgs 35-36).

102. As to the claim in paragraph 101, Plaintiff objected in writing to being
placed in a location where he could not receive ordered care requested by
Valerie Bauer. (See Discharge Paper, Exhibit 11 Pgs 58-59).

103. On April 6th, 2009, Plaintiff was forced to ride a bus with hard plastic
seats for 3½ hours while sitting on top of his surgical wound. (See Grievance
Exhibit 1 Pgs Pgs 33-34).

104. As to the claim in paragraph 103, Sergeant Clement cuffed Plaintiff to another

offender **preventing** him from sitting in a sideways manner to protect the open wound, refused to allow Plaintiff to contact medical staff for cushions or a pass, and stated that "the conversation is over offender." Her Deliberate Indifference in knowingly causing the Plaintiff pain and suffering proves causation for relief. In addition to compensatory damages, Plaintiff seeks punitive damages from this defendant.

105. On the evening of April 6th, 2009, Plaintiff was taken to the Estelle Unit where he was refused to see any medical staff, was not "Chained-In" in violation of T.D.C.J. and U.T.M.B. Policy, and was placed in an Ad-Seg cell where he was confined 24/7 for the following 8 days. (See Grievance, Exhibit 1 Pgs 31-32).

106. As to the claim in paragraph 105, Defendant Jamie Williams is directly responsible for ensuring that newly arriving offenders to the Estelle Unit are evaluated (Chained-In) upon arrival and that Unit Staff are trained in following that policy. Plaintiff was not evaluated as admitted upon Step 2 Grievance review. (See Grievance, Exhibit 1 Pgs 31-31).

107. From April 6th thru April 14th, 2009, Plaintiff remained confined 24/7 in an Ad-Seg Cell where a scabbies outbreak had just occurred. Plaintiff was unable to go to the Infirmary, could not get bandage changes, and he could not get proper doses of ordered medication as prescribed. (See Grievance, Exhibit 1 Pgs 31-32).

108. On April 16th, 2009, Defendant Ernestine Julye M.D. continued her "Campaign of Harrassment" against Plaintiff by retaliating, becomming verbally abusive, using security to force her treatment upon Plaintiff, refusing to follow the orders of the treating surgeons, and by forcing Plaintiff to discard his Hospital provided Sitz Bath pan. Her actions resulted in a failed surgery and unnecessary pain and suffering. (See Original Carbon Copies of Grievances T.D.C.J. has refused to process, Exhibit 2 Pgs 1-3)(See also Medical Record, Exhibit 12 Pg 69 and 72).

109. As to the claim in paragraph 108, Ernestine Julye M.D. stated, "He knows everything there is to know about wound care","He is an expert on everything", and that "He can probably show all of us how to do our jobs." (See Unprocessed Grievances, Exhibit 2 Pgs 1-3).

110. As to the claim in paragraph 109, Ernestine Julye was responding to Plaintiff's request to follow the orders of the treating surgeon which had follow up orders for wound care. Ernestine Julye subsequently proceeded to call security and forced her treatment upon the Plaintiff. Her actions resulted in failure of the surgery and caused unnecessary pain and suffering. (See Original carbon copies of unprocessed Grievances, Exhibit 2 Pgs 1-3).

111. As to the claims in paragraph 108, 109, and 110, Plaintiff filed three (3) Step 1 Grievances on the date of the incident, April 16th, 2009, which T.D.C.J. Officials have repeatedly refused to process. (See Original Carbon Copies of unprocessed Grievances, Exhibit 2 Pgs 1-3)(See also Correspondence attempting to resolve failure to process, Exhibit 2 Pgs 7-10).

112. As to the claim in paragraph 111, Plaintiff filed a Step 1 Grievance on the Estelle Unit Grievance Investigator after repeated failure to respond to the

inquiries as to the status of the Grievances via I-60 (request to official). (See Grievance, Exhibit 2 Pg 8).

113. As to the claim in paragraph 112, M. Dawson was appointed to investigate and provided an Inter-Office Communication stating the Grievances were never processed. (See Exhibit 2 Pg 7).

114. As to the claim in paragraph 113, Plaintiff sent another hand-written copy of each of the three (3) grievances via a truck mail envelope to M. Dawson for proper processing.

115. As to the claim in paragraph 114, Plaintiff discovered that the Grievances were still not processed and he filed them a third time upon return to the Huntsville Unit.

116. As to the claim in paragraph 115, the Huntsville Unit initially agreed to process them but ultimately refused stating "the Grievable time period has expired." (See Back of Grievances, Exhibit 2 Pgs 4-6)(See also copy of I-60 stating they would be processed, Exhibit 2 Pg 11).

117. As to the claims in paragraphs 111-116, Plaintiff contacted the Office of the Inspector General without resolve and asserts that he has exhausted his remedies for these issues. (See Exhibit 2 Pgs 9-10).

118. On April 28th, 2009, Defendant Ernestine Julye M.D. continued her "Campaign of Harrassment" by failing to renew Plaintiff's medication until April 29th, 2009 causing unnecessary pain and suffering.

119. On April 30th, 2009, Pain medication was again denied from the failure of Ernestine Julye M.D. to fill out the required Non-Formulary request form.

120. As to the claim in paragraph 119, Ernestine Julye M.D. refused to respond to requests form nursing staff and Plaintiff was not provided any medication until May 1st at 6 pm following an order from Jamie Williams, Practice Mgr.

121. On May 8th, 2009, Plaintiff was transported to Hospital Galveston, evaluated by Valerie Bauer M.D., and told an MRI was to be ordered.

122. As to the claim in paragraph 121, Plaintiff was held in a holding cell for three (3) days where he was denied bandage changes as ordered and pain medication. (See Medical Record, Exhibit 11 Pgs 40-41 and Grievance, Exhibit 1 Pgs 39-40).

123. As to the claim in paragraph 122, Plaintiff filed a Step 1 Grievance which was falsified by Mr. Hill and admitted upon Step 2 review. (See Grievance, Exhibit 1 Pgs 39-40).

124. As to the claim in paragraphs 121 and 122, Plaintiff received no MRI and he was returned to the Estelle Unit with no treatment. (See Medical Record, Exhibit 11 Pgs 40-41).

125. Upon return to the Estelle Unit on May 11th, 2009, Plaintiff was informed by nursing staff that his medications had again expired while he was gone and were not refilled.

126. As to the claim in paragraph 124, Plaintiff received no pain medication between May 11th and the afternoon of May 13th, 2009 when a temporary 3-day order was finally provided. Refusal to provide necessary pain relief was a Wanton infliction of pain and suffering.

127. On May 14th, 2009, Plaintiff experienced Intestinal Gas comming out of the open wound indicating that he was not healing.

128. On May 18th, 2009, Plaintiff was transported to Hospital Galveston for an MRI which resulted in severe pain from the use of a Probe with no pain relief or numbing gel provided. (See Medical Record, Exhibit 11 Pg 33).

129. As to the claim in paragraph 128, Plaintiff suffers from a Posterior Midline Fissure and the pain was unbearable. (See Medical Records, Exhibit 11 Pgs 6-8 and 18-19).

130. As to the claim in paragraph 129, when Plaintiff could no longer take the excruitiating pain and asked to stop, he was treated like an animal and told by Dr. Wolf that stopping would constitute refusing treatment.

131. The MRI results obtained on May 18th, 2009, revealed findings consistent with a Peri-Rectal Fistula and a fatty mass invading the sphincter complex. (See MRI Report, Exhibit 11 Pg 33).

132. On May 20th, 2009, Plaintiff was seen by Valerie Bauer in some exam room in the holding cell area where he was informed of the Posterior Midline Fissure, prescribed Nitro Cream, and told he could do his own bandage changes. (See Medical Records, Exhibit 11 Pg 42-44).

133. On May 21st, 2009, Plaintiff's pain medication was discontinued in place of Ibuprofen prior to being provided the Nitro Cream as ordered.

134. On May 25th, 2009, nurse Sharon Jolley informed Plaintiff that his wound had opened up larger than on May 21st indicating he was not healing.

135. On June 19th, 2009, Plaintiff was denied use of a padded chair by Katherine Pearson N.P. and Ernestine Julye M.D. despite his open-draining wounds and his difficulty sitting down.

136. On June 26th, 2009, Plaintiff spoke to Ernestine Julye M.D. upon her making rounds and he explained that Intestinal Gas was still comming out wounds at various times. Defendant Ernestine Julye responded, "Why should we believe you just because you say that you have some sensation."

137. On July 2nd, 2009, Plaintiff spoke to Ernestine Julye M.D. to explain that he continued to have swollen glands under chin and was still having the Flu-Like illness he was experiencing.

138. As to the claim in paragraph 137, Ernestine Julye M.D. replied, "Do you know what you got--do you know what you got?" She then stated, "You got a gift that keeps on giving an you will **never** heal."

139. As to the claim in paragraph 139, Plaintiff responded by stating that he could be healed with the proper treatment as stated by outside experts.

140. As to the claim in paragraph 139, Ernestine Julye M.D. stated, "you have a surgical problem, talk to your surgeon," and "nobody knows why men your age get these, they don't go away, and the conversation is over."

141. As to the claim in paragraph 139, Nurse Ray entered the room, at the request of Ernestine Julye, and stated, "you are **never** going to heal", "you are going to have to do your own bandages", and "you are going to be discharged from the RMF (regional medical facility) to the Estelle Unit main building."

142. On July 7th, 2009, Plaintiff was discharged from the RMF (regional medical facility) to general prison population with open-bleeding wound and a very painful Posterior Midline Fissure. (See Grievance, Exhibit 1 Pgs 41-41 and Medical Records, Exhibit 12 Pgs 74-74).

143. As to the claim in paragraph 142, Plaintiff was provided no medical restrictions consistent with his condition despite numerous orders for them, no orders for bandage changes or supplies, no keep on person medication, no follow up orders with treating surgeon, no ordered sitz baths, and as retaliation for past Grievances, he was placed in an un-airconditioned cell in the middle of July with no fan. Defendant Ernestine Julye was personally aware that the Plaintiff was assigned to the Huntsville unit and had no property such as a fan on the Estelle unit. (See Grievance, Exhibit 1 Pgs 41-42)(See also medical records, Exhibit 11 Pgs 58 and 69 and Exhibit 12 Pgs 73-75).

144. As to the claim in paragraph 143, Plaintiff's bandage would become saturated within a half hour of putting it on with sweat and the failure to provide the ordered Sitz baths caused excessive pain and suffering by trapping the drainage instead of facilitating it.

145. On July 10th, 2009, Plaintiff arrived at the Estelle Infirmary to get a pass for bandage changes, keep on person medication, and to get medically unassigned. (See Grievance, Exhibit 1 Pgs 41-42 and Medical Record, Exhibit 12 Pgs 76-77).

146. As to the claim in paragraph 145, Plaintiff was told he would not be medically unassigned despite the numerous orders made prior to this date and he was forced to work in a textile mill with open-bleeding wound and a posterior midline fissure. (See Grievance, Exhibit 1 Pgs 41-42)(See also Medical Records, Exhibit 11 Pgs 58 and 69---orders to medically unassign-- and Exhibit 12 Pgs 73, and 76-77).

147. As to the claim in paragraph 146, Plaintiff's condition was aggravated from all of the activity required to work in a textile mill and he suffered additional pain in his left buttock, his left leg, and back, as well as the continued Flu-Like illness and fatigue. (See Grievance, Exhibit 1 Pgs 41-42).

148. On July 14, 2009, Plaintiff was refused a doctor ordered bandage change from nurse Martin Oakley despite a valid order. (See Grievance, Exhibit 1 Pgs 43-44 and Medical Pass, Exhibit 11 Pg 77).

149. On July 21st, 2009, Plaintiff was accused of causing his wound to re-open by Nurse Gregory and was told "you must have somebody fooled". (See Grievance, Exhibit 1 Pgs 45-46).

150. On July 27th, 2009, Plaintiff was refused a bandage change from defendant

Martin Oakley despite a valid doctor ordered pass. (See Grievance, Exhibit 1 Pgs 47-48 and Valid Pass, Exhibit 11 Pg 77).

151. On July 2?th, 2009, Plaintiff was refused a bandage change from nurse Lester Findley in which Mr. Findley tried to get the Plaintiff to sign a refusal form when he was the one refusing doctor ordered care. His actions constituted Deliberate Indifference and caused unnecessary pain and suffering. The failure to provide proper care contributed to the formation of a cyst that required a second surgery. (See Grievance, Exhibit 1 Pgs 49-50)(see also Medical pass, Exhibit 11 Pg 77, Refusal Forms, Exhibit 11 Pgs 75-76, and Clinical notes, Exhibit 12 Pgs 129-130).

152. On July 29th, 2009, Plaintiff was again refused a doctor ordered bandage change by nurse Lester Findley in which Mr. Findley attempted to have the Plaintiff sign a refusal form when he was the one refusing doctor ordered care. His actions constituted Deliberate Indifference resulting in unnecessary pain and suffering. His conduct was addressed upon Step 2 review. (See Grievance, Exhibit 1 Pgs 51-52)(See also Valid Pass, Exhibit 11 Pg 77, Re-refusal  forms, Exhibit 11 Pgs 75-76, and Clinical notes, Exhibit 12 Pgs 129-130).

153. As to the claim in paragraph 152, during the refusal, nurse Findley stated "If I change your bandage, I might sexually gratify you in some way" in the presence of Security officer Walker and Nurse Nalley Ortega. (See Grievance, Exhibit 1 Pgs 51-52 and 55-56).

154. On July 30th, 2009, Plaintiff's order to receive bandage changes was changed forcing him to have to complete wound care on a wound that he cannot even see. (See Grievance, Ehxibit 1 Pgs 43-56)(See also Medical Record, Exhibit 11 Pg 74).

155. As to the claim in paragraph 154, Plaintiff could not properly clean, disinfect, and rebandage the wound in a sterile manner.

156. On July 31st, 2009, Plaintiff spoke to Robert Mahaffey M.D. to explain his problem with bandage changes and his erroneous discharge from the RMF. (See Medical Record, Exhibit 12, Pg 78).

157. As to the claim in paragraph 156, Robert Mahaffey M.D. told nursing staff "great they put him out here for us to try and take care of" and after meeting briefly with Defendant Jamie Williams, Dr. Mahaffey reluctantly decided that Plaintiff could continue his own bandage changes if Iodosorb was given. (See Medical records, Exhibit 11 Pg 73 and Exhibit 12 Pg 78).

158. As to the claim in paragraph 157, Robert Mahaffey M.D. was one of the few doctors that understood the severity of Plaintiff's condition and he requested a follow up appointment with surgery clinic. (See Medical Record, Exhibit 12 Pg 78).

159. On Aug. 3rd, 2009, Plaintiff was taken to Hospital Galveston at a time when his treating surgeon, Valerie Bauer, was on vacation. Plaintiff was seen by resident physician Kargel who recommended an exam under anesthia. Due to the complexity of Plaintiff's condition, she agreed to contact Dr. Bauer and reschedule. (See Grievance, Exhibit 1 Pgs 53-54 and Medical Record Exhibit 11 Pg 38-39).

160. As to the claim in paragraph 159, the necessity for further surgery belies the assertions of Defendants' that Plaintiff was healed. (See Exhibit 1 Pg 42--Grievance).

161. On Aug. 5th, 2009, Plaintiff spoke to Robert Mahaffey M.D. about the Bogus trip to Hospital Galveston and was informed that no follow up had been made by resident physician Kargel. (See Medical Record, Exhibit 12 Pg 79).

162. As to the claim in paragraph 161, Dr. Mahaffey requested a follow up directly with Valerie Bauer. (See Medical Recore, Exhibit 12 Pg 79).

163. On Aug. 8th thru the 13th, 2009, Plaintiff experienced severe back pain from the buildup of drainage in his tissue from failure to allow Sitz baths. He was unable to stand up straight and walked hunched over.

164. On Aug. 14th, 2009, Plaintiff underwent a second surgery due to the formation of a cyst invading the sphincter complex and failure of the Posterior Midline Fissure to heal. The cyst was not present in April 2009 and was a result of failed care. (See Medical Records, Exhibit 11 Pgs 18-20 and 72).

165. As to the claim in paragraph 164, the cyst was excised consisting of cutting into the sphincter muscles, however the fissure went untreated despite the fact that Botox was ready for use. (See Medical Records, Exhibit 11 Pgs 18-20 and 67-68).

166. On Aug. 15th, 2009, nursing staff tried to discharge Plaintiff to a holding area where he would again be refused Sitz baths, bandage changes, and proper dosages of medication. (See Medical Records, Exhibit 11 Pg 9-17).

167. As to the claim in paragraph 166, nursing staff contacted care managers to straighten out discharge papers when Plaintiff objected in writing. (See Medical Record, Exhibit 11 Pg 69-70).

168. Plaintiff was provided a post surgical referral to Michael Snyder M.D., colon Rectal specialist, in HOUSTON, Texas, however, T.D.C.J. Officials have refused to comply with the referral. This refusal is resulting in Deliberate Indifference of all upper level Directors. (See noted referral, Exhibit 11 Pgs 9-19 and Exhibit 12 Pg 80).

169. On Aug. 17th, 2009, Plaintiff was taken to Estelle Unit where he was again told he would be placed in general population. After discovering Plaintiff could not walk, he was taken to the Estelle RMF (Regional Medical Facility).

170. As to the claim in paragraph 169, none of the staff at the RMF were aware that Plaintiff was comming and no room had been assigned. After a long debate, Plaintiff was admitted pending approval. (See Medical Record, Exhibit 12 Pg 80).

171. As to the claim in paragraph 170, Plaintiff was denied ordered pain medication because policy states that the medication order from Hospital Galveston is not valid in the Unit computer until a medical doctor enters it. (See Medical Records, Exhibit 12 Pgs 80, 82, and 83).

172. As to the claim in paragraph 171, Plaintiff suffered all night long and all

-21-

of the next day, until 4:30 pm, with excruitiating pain from the lemon sized surgical wound due to no pain relief. (See Medical Record, Exhibit 12 Pg 82-84--noting no pain medication).

173. On Aug. 18th, 2009, Defendant Katherine Pearson issued an order to change Plaintiff's bandage changes to twice a week instead of 3 times daily as ordered by surgical doctor, Valerie Bauer. Her actions constituted Deliberate Indifference in overriding orders of specialists. (See Medical Records Exhibit 11 Pgs 9-17 and 69-70 and Exhibit 12 Pgs 82-83).

174. As to the claim in paragraph 172, Katherine Pearson stated that the supplies were "too expensive" to use daily and her actions contributed to another failed surgery. (See Medical Records, Exhibit 11 Pgs 9-17 and 69-70 and Exhibit 12 Pgs 82-83).

175. On Aug. 21st, 2009, Ernestine Julye M.D. changed Plaintiff's bandage change to once daily, however, this was still in opposition to orders of all the specialists treating Plaintiff. Her Deliberate Indifference in refusing to follow the orders of Valerie Bauer caused another failed surgery. ( See Medical Records, Exhibit 11 Pgs 9-17 and 69-70 and Exhibit 12 Pg 85).

176. On Aug. 22nd, 2009, Plaintiff was informed that his pain medication expired because an order was only done for 3 days in opposition to Hospital orders.

177. As to the claim in paragraph 176, Plaintiff suffered in extreme pain until 9 am on Aug 23rd, 2009 with a lemon sized open surgical wound with no relief. (See Medical Record, Exhibit 12 Pg 132).

178. On Aug. 28th, 2009, Plaintiff was forced to go to pill line to get medication by nurse Lisa Horton in violation of doctors orders for bed rest. Her actions contributed to another failed surgery.

179. As to the claim in paragraph 178, nurse Horton stated "you can walk", and "all I ever see you do is lying in bed" even after she noted doctors orders for bed rest in the computer.

180. On Sept. 13th, 2009, Plaintiff reported post surgery spasming of rectal muscles causing difficulty having bowel movements and which caused additional pain.

181. As to the claim in paragrapg 180, Plaintiff was denied any relief for the condition and was forced to suffer.

182. On Sept. 17th, 2009, Defendant Katherine Pearson proceeded to override the current medication order of Ernestine Julye M.D. and erroneously lowered Plaintiff's dosage of medication to 1 tablet every 12 hours instead of 2 every 6 hours. Her Deliberate Indifference caused unnecessary pain and suffering.

183. As to the claim in paragraph 182, the power struggle was evident when the provider put medication back to 2 tablets every 6 hours on Sept 19th, 2009.

184. On Sept. 22nd, 2009, Plaintiff was not taken to the E.R. as usual and was told that nurses Lisa Horton and Collette Odibo would perform the bandage change.

-22-

185. As to the claim in paragraph 184, Plaintiff was verbally and physically abused by nurse Lisa Horton when she stated "I know why you are in prison, I can see why, and shut up." She became physically abusive when she grabbed Plaintiff's left buttock and jabbed it really hard causing severe pain. She then stated "your wound is almost closed, there is nothing wrong with you, and you need to get over it."

186. As to the claim in paragraph 185, Plaintiff had bruising reported on Sept. 26th in his bandage change log and witnesses were present including offenders Theodore Cutley TDCJ # 151 9733 and Anthony Gardner TDCJ # 1013456.(See Medical Record, Exhibit 12 Pg 135 and Grievance, Exhibit 1 Pgs59-60).

187. On Sept. 23rd, 2009, at 3 am, nurse Horton again verbally abused the Plaintiff with physical threats of violence by stating "If I see you use that chair to walk like that again, I will drag you back to your room." (See Grievance, Exhibit 1 Pgs 57-58).

188. As to the claim in paragraph 187, Plaintiff explained that doctors permission was granted for use of the chair.

189. As to the claim in paragraph 188, nurse Horton replied "that's because nobody wants to deal with you, but I'm going to." She continued inaudible threats until other staff members removed her from the chow hall area.

190. Plaintiff seeks punitive damages from Defendant Lisa Horton.

191. On Sept. 27th, 2009, Plaintiff was provided an order to use a padded Geri-Chair.

192. As to the claim in paragraph 191, nurse Horton came to Plaintiff's room and stated "I see you got what you want you big baby" and "Don't you even talk to me."

193. On Oct. 3rd, 2009, Plaintiff experienced an episode of Intestinal gas comming out his wound indicating he was not healing. (See Medical Record, Exhibit 12 Pg 134).

194. On Oct 6th, 2009, Defendant Katherine Pearson again proceeded to override the orders of the primary care provider and discontinued Plaintiff's order for a padded chair while stating his wound was healed.

195. As to the claim in paragraph 194, Plaintiff stated that nurse Pearson was obviously mistaken because the wound was continuously draining and Intestinal Gas continued to escape out the wound.

196. As to the claim in paragraph 195, Plaintiff was informed by nurse Collette Odibo that nurse Pearson was trying to get Plaintiff discharged despite his open-draining wounds. (See Medical Record, Exhibit 12 Pg 86).

197. On Oct 7th, 2009, Plaintiff was experiencing pain trying to sit and he tried to get the order re-instated for a padded chair but was refused.

198. On Oct 9th, 2009, Plaintiff was receiving a bandage change when nurse Pearson walked up and stated "it looks healed to me."

199. As to the claim in paragraph 198, Plaintiff's wounds have never been healed since their origination on Sept. 1st, 2008, due to repeated delays in treatment and refusals to follow orders of surgical specialists. (See Medical Records, Exhibit 11 Pgs 80-81 and Exhibit 12 Pgs 37-56, and 117-140)(See also Affidavits of Plaintiff, Leslie Dean Reading and Mark Ladish, Exhibit 5 pgs 1-4, Exhibit 3 Pgs 1-2, and Exhibit 4 Pgs 1-2).

200. On Oct. 13th, 2009, Plaintiff continued to suffer in pain without medication and Defendant Ernestine Julye refused to respond to requests from nurses Aronica Castro and Sharon Jolley. Her refusal to respond and provide necessary pain medication resulted in Deliberate Indifference and continued Harassment.

201. On Oct. 14th, 2009, Plaintiff was still refused any valid form of pain relief and his bandage became saturated with yellow fluid documented by nurse Rene Vauriguad. (See Medical Record, Exhibit 12, Pg 136).

202. As to the claim in paragraph 201, Plaintiff was suffering increased pain, aching, and fatigue with hardly the energy to walk around.

203. On Oct. 15th, 2009 at 7:30 am, Plaintiff was having a bowel movement when blood began pouring out from under his bandage.

204. As to the claim in paragraph 203, nurse Dawn Rainey went to speak to Ernestine Julye in person and after 3 days of suffering, Plaintiff was provided pain medication. The very fact that she eventually provided the medication shows that she purposely made Plaintiff suffer.

205. On Oct. 16th, 2009, Plaintiff removed his bandage in the shower when yellow fluid with white particles began to pour out, followed by blood. The shower floor was covered in blood until the drainage quit after 5 minutes.

206. As to the claim in paragraph 205, Plaintiff's wound had black tissue around the opening, he continued to experience drainage and pain from inside and outside of the rectal area, he continued to have pain in his left buttock, left leg, and lower back, he remained ill with Flu-Like symptoms, and all his symptoms were ignored. (See Grievance, Exhibit 1, Pgs 69-70).

207. On Oct. 22nd, 2009, Plaintiff requested a refill on an existing anti-inflamatory (Salsalate) used for an unrelated back condition, a refill on Hydrocortisone cream, and a refill on expiring pain medication due to continued problems in getting timely refills.

208. As to the claim in paragraph 207, Defendant Ernestine Julye M.D. refused all refills and clearly retaliated by cutting pain medication in half for the last three days of the current order. (See Grievance, Exhibit 1 Pgs 61-66).

209. On Oct. 24th, 2009, an order was entered by Defendant Ernestine Julye M.D. forcing Plaintiff to perform his own wound care on a wound that he cannot even see. Her actions constitute Deliberate Indifference and it is unknown what additional damage is being done. (See Grievance, Exhibit 1 Pgs 67-68).

210. As to the claim in paragraph 209, and Upon Information and Belief, Plaintiff was the only offender in the RMF (Regional Medical Facility) being forced to

perform his own wound care and bandage changes.

211. Plaintiff was previously forced to try and perform his own wound care between July 2, 2009 and Aug. 14th, 2009 which also contributed to the need for a second round of surgery. (See Grievance, Exhibit 1 Pgs 67-68).

212. As to the claims in paragraphs 209-211, Plaintiff had no sanitary environment and could only change his bandage while sitting on a toilet with his feet in the air while using a mirror to try and see the wound location.

213. On Oct. 26th, 2009, Plaintiff again suffered in pain due to his medication expiring without any renewals. He was even denied plain aspirin or tylenol despite having notably painful Fistulas and a Fissure. (See Grievance, Exhibit 1 Pgs 61-62).

214. From Oct. 26th thru the 28th, 2009, Defendant Ernestine Julye M.D. continued to refuse to respond to nurses Aronica Castro, Sharon Jolley, Connie Degelia, and Collette Odibo regarding Plaintiff's medication causing an unnecessary and Wanton infliction of pain and suffering.

215. As to the claim in paragraph 214, Plaintiff's father, Dennis Lempar, spoke to Ernestine Julye via telephone and was told that a renewal of pain medication would be given, however, a renewal was never provided.

216. On Oct. 29th, 2009, Ernestine Julye M.D. did a digital rectal exam causing severe pain, told Plaintiff "because you had a holiday away from it" that she would provide pain medication, and then refused anything other than plain 400mg tylenol. (See Medical Record, Exhibit 12 Pg 89).

217. As to the claim in paragraph 216, Defendant Ernestine Julye knew first hand the pain Plaintiff was suffering was excruiting as he almost jumped off of the exam table during the rectal exam. Her refusal to provide any relief, especially after aggravating the condition, was in retaliation for having to speak to Plaintiff's father. Her action constituted a Deliberate Indifference to a serious medical need and a wanton infliction of pain. (See Medical Record, Exhibit 12 Pg 89).

218. On Oct. 31th, 2009, Plaintiff was informed that 600mg Ibuprofen had been ordered by Defendant Ernestine Julye M.D. after repeated requests from nurse Aronica Castro. This fact proves that refusal to provide pain relief in the previous days was a Deliberate Indifference and Purposeful infliction of pain and suffering.

219. On Oct. 31st, 2009, Plaintiff spoke to nurse Lee to record his saturated bandage. The drainage was not being recorded as a direct attempt to cover up the fact that the wounds were not healing and the second surgery was a failure. (See Grievance, Exhibit 1 Pgs 67-68).

220. On Nov. 1st, 2009, Plaintiff was told that he was scheduled to go to an uncancelled appointment made prior to his surgery. (See Grievance, Exhibit 1 Pg 54---Noting Nov 1st app. made before surgery date of Aug. 14th, 2009).

221. As to the claim in paragraph 220, the method of transportation was listed as a bus, Plaintiff was in too much pain to endure a 3 hour bus ride, and

Plaintiff requested to reschedule the appointment.

222. As to the claim in paragraph 221, the appointment was not a follow up with Valerie Bauer, the treating surgeon, because it was set for the General Surgery clinic and not the G.I. Clinic where Plaintiff was told that any follow up would be. (See Grievance, Exhibit 1 Pg 54----Showing Appt. was made for GNSRG and not G.I. Clinic).

223. Because Plaintiff was forced to sign a refusal form to reschedule (as stated on form), T.D.C.J. and U.T.M.B. Defendants immediately began to use the request as a reason to justify failed care in Grievance responses. (See Grievances, Exhibit 1 Pgs 55, and 69-70).

224. As to the claim in paragraph 223, Defendants have generated numerous claims that Plaintiff has refused treatment without any Justification, Supporting Documentation, and their claims have all been made out of context. (See Letters from officials, Exhibit 8 Pgs 2, 4, and 5 and Grievances, Exhibit 1 Pgs 12, 14, 16, 18, and 20).

225. As to the claims in paragraph 224, and Upon Information and Belief, Defendants failed to cancel the pre-surgery appointment so that they could generate a refusal form knowing that Plaintiff could not ride a bus 3 hours in pain.

226. Upon Information and Belief, Defendants have spent more time, money, and effort trying to excuse and conceal failed care than if they provided it in the first place. Both U.T.M.B. and T.D.C.J. Defendants have circumvented the Grievance system providing false information, providing only canned responses, and taking absolutely no action to solve Plaintiff's condition.

227. From Nov. 2nd thru Nov. 5th, 2009, Plaintiff continued to suffer constant pain despite use of 600mg Ibuprofen. Plaintiff spoke to nurses Sharon Jolley, Aronica Castro, and Dawn Rainey requesting anything oral or topical to stop the pain.

228. As to the claim in paragraph 227, Plaintiff was finally provided 800mg Ibuprofen every 8 hours which did not stop the pain but helped enough so that Plaintiff could get out of bed for limited amounts of time.

229. On Nov. 6th, 2009, a lump formed under Plaintiff's skin between his Anus and spinal area when he passed gas. This lump was directly in line with the untreated Posterior Midline Fissure. (See Medical Record, Exhibit 11 Pgs 80-81 and Exhibit 12 Pgs 91 and 138).

230. As to the claim in paragraph 229, Plaintiff's condition again deteriorated when the lump ruptured into another open-bleeding wound. (See Medical Records, Exhibit 11 Pgs 80-81 and Exhibit 12 Pgs 91 and 138).

231. On Nov 7th, 2009, Plaintiff woke up with the ABD Pad over his bandage completely saturated with bloody drainage and he discovered that it was comming from the new wound.

232. As to the claim in paragraph 231, the new wound is too close to the Anus to be bandaged, remains untreated, and at the time, Plaintiff was refused any antibiotic. (See Medical Record, Exhibit 11 Pgs 80-81--showing drawing

of wound locations and Exhibit 12 Pgs 95-95----showing refusal of antibiotic).

233. On Nov. 8th, 2009, Defendant Bobby Vincent M.D. wrote a letter to Plaintiff's father falsifying medical information related to treatment of a fissure which never occurred and stating that Plaintiff's sphincter muscles were not cut during surgery. (See Letter, Exhibit 8 Pgs 6-7).

234. As to the claim in paragraph 233, Post-Op reports clearly state that the fissure remained untreated and an MRI clearly indicated that the surgical removal of the newly formed cyst invaded the sphincter complex. (See MRI report, Exhibit 11 Pg 33 and Post-Op reports, Exhibit 11 Pgs 6-8 and 18-19) (See also Grievance, Exhibit 1 Pgs 61 and 69--adressing false documentation).

235. As to the claim in paragraphs 233-234, Defendant Bobby Vincent's Deliberate Indifference in falsifying documentation to family members and his failure to ensure Plaintiff received the necessary care, resulted in unnecessary and continued pain and suffering. (See Grievances, Exhibit 1 Pgs 61 and 69).

236. On Nov. 9th, 2009, Defendant Ernestine Julye M.D. and nurse Amber Post came to Plaintiff's room asking why he was not up moving around. Plaintiff explained that he was in continued pain from the fissure, fistula, and recent surgery. Ernestine Julye subsequently told Plaintiff his pain was only from some hemorroids.

237. As to the claim in paragraph 236, Plaintiff explained that the hemorroids were recent from the spasming of muscles and were not the cause of the pain. Ernestine Julye stated, "you don't know what is going on."

238. As to the claim in paragraph 237, Plaintiff presented copies of his CT-Scan and MRI reports and asked Ernestine Julye if she read them. She provided no response.

239. On Nov. 10th, 2009, Upon request from nurse Sharon Jolley, Plaintiff made a list of a few things for her to check into. Katherine Pearson got involved and returned the list stating, "sick call requests not indicated for patients with 24 hour care."

240. As to the claim in paragraph 237, Defendant Katherine Pearson's actions were Deliberately Indifferent resulting in pure harrassment and were in opposition to all of the responses provided by practice manager Jamie Williams and Step 2 grievance investigators. (See Grievance Responses, Exhibit 1 Pgs 61-63, 65-66 and 69).

241. On Nov. 12th, 2009 at 9:45 am, Plaintiff experienced alot of blood and blood clots comming out with stool during a bowel movement. Blood was also comming from under Plaintiff's bandage on his left buttock.

242. As to the claim in paragraph 239, Plaintiff continued to experience severe pain not alleviated by Ibuprofen, His bandage became saturated again by 7 pm, and he only slept after exhaustion overrode the pain.

243. On Nov. 14th, 2009, Plaintiff was subjected to a room search and his previously prescribed Nitro cream, used to treat fissure, was taken away. Plaintiff was then being purposely tortured by confiscating the only thing he had to

stop the rectal burning from the untreated fissure. (See Medical Record, Exhibit 1 Pgs 92 and 97).

244. As to the claim in paragraph 243, Plaintiff spoke to nurse Aronica Castro in attempt to get the Nitro cream returned but was refused despite verbal orders from Ernestine Julye M.D. to use as needed on Oct 29th, 2009.

245. On Nov. 16th, 2009, Plaintiff requested from Katherine Pearson and Rajesh Malhotra that his Nitro cream be returned, that he be provided a donut pass and a jacket in case of travel, and that antibiotics be provided. Plaintiff also requested something better for pain relief to stop the suffering.

246. As to the claim in paragraph 245, Defendant Katherine Pearson denied all of Plaintiff's requests and stated she was no longer allowed to provide jacket passes. (See Medical Record, Exhibit 12 Pg 92--stating no need for nitro cream and that wound is healed).

247. Upon information and Belief, Katherine Pearson entered a jacket pass order for offender Billy Dryden, TDCJ # 1342329 a few hours after refusing to re-new Plaintiff's pass and she mistakenly thought that the Nitro cream was for the open wounds instead of the internal fissure for which surgeons prescribed it.

248. On Nov. 17th, 2009 at 9:30 am, Plaintiff had excrutiating pain during and after a bowel movement which brought tears to his eyes even while on Ibuprofen.

249. As to the claim in paragraph 248, Plaintiff was unable to stop the burning without the Nitro Cream that was taken away on Nov. 14th, 2009 and he was forced to suffer until the pain subsided hours later.

250. On Nov. 18th, 2009, Plaintiff's Ibuprofen expired and instead of being re-filled, it was replaced with Maloxicam which did nothing to stop the pain from the open wounds or fissure. (See Exhibit 12, Pg 97--Medical Record).

251. From Nov. 19th thru Nov. 22nd, 2009, Plaintiff suffered in pain from the newly prescribed Maloxicam not even helping stop the severe pain he was in. Plaintiff spoke to nursing who contacted Katherine Pearson and Ernestine Julye but Ibuprofen was refused. (See Medical Record, Exhibit 12 Pg 97).

252. On Nov. 24th, 2009 Plaintiff woke up experiencing severe back pain and could not easily roll over to get out of bed due to a feeling of trapped drainage near his spine. (See Medical Record, Exhibit 12 Pg 98).

253. As to the claim in paragraph 252, Plaintiff agreed to take x-rays but was never informed of any results and is unsure if these results have ever been evaluated. (See Medical Record, Exhibit 12 Pg 98).

254. On Nov. 24th, 2009, Rajesh Malhotra changed Plaintiff's bandage change order to have nursing perform bandage changes again. After a debate, he provided 1 Tylenot 3 tablet twice daily for pain. (See Medical Record, Exhibit 12 Pg 99).

255. As to the claim in paragraph 254, Dr. Malhotra recognized the need for proper wound care and proper pain relief and overrode the orders of Defendant Ernestine Julye M.D. Plaintiff was able to get some much needed sleep from the pain relief.

256. On Dec. 7th, 2009, Defendant Katherine Pearson came to Plaintiff with a Silver Nitrate Stick and an already prepared refusal form. She stated that Plaintiff had to let her use the Silver Nitrate or sign the refusal. (See Medical Record, Exhibit 12 Pg 104).

257. As to the claim in paragraph 256, Plaintiff reluctantly complied due to the Silver Nitrate not being approved or ordered by surgical staff, and the Silver Nitrate was applied. It came out of the second wound indicating that the wounds were internally connected and that the Silver Nitrate went into the Fistula tract.

258. As to the claim in paragraph 257, a previously non-existent cavity was later discovered on Jan 11th, 2010 that was obviously contributed to by the use of Silver Nitrate and putting it in Plaintiff's Fistula tract. Katherine Pearson's Deliberate Indifference in using Silver Nitrate on Plaintiff, without the expertise to do so, caused additional progression of Plaintiff's condition. (See Medical Record, Exhibit 11 Pgs 80-81--showing discovery of new cavity and Medical Record, Exhibit 12 Pgs 89-90--showing no mass or cavity).

259. On Dec 8th thru Dec. 9th, 2009, Silver Nitrate continued to come back out of Plaintiff's wounds turning them white and trapping the drainage inside Plaintiff's tissue.

260. On Dec 13th, 2009, Just 12 days before Christmas, Plaintiff was informed by security that Defendant Ernestine Julye had initiated a medical transfer to send Plaintiff to another Unit in a completely different region of T.D.C.J. (See Medical Record, Exhibit 12 Pg 105).

261. On Dec. 14th, 2009, Plaintiff was transfered to the Beto I Unit Infirmary which is one of the worst and most dangerous units in T.D.C.J. system (See Medical Record, Exhibit 12 Pg 105).

262. As to the claim in paragraph 261, and Upon Information and Belief, Ernestine Julye made the transfer out of retaliation in order to get Plaintiff out of her region and keep him from his family.

263. Upon arrival to the Beto I Unit on Dec. 14th, 2009, Plaintiff was placed in a locked room and confined 24/7 for two days. (See Medical Record, Exhibit 12 Pg 106--Listing restrictive conditions).

264. On Dec. 16th, 2009 at 6 pm, Plaintiff was called out by Defendant Cheryl Egan and was immediately harrassed. She asked why Plaintiff had a cane, she had security take it, and she proceeded to do her evaluation.

265. As to the claim in paragraph 264, Plaintiff was told that he did not meet the U.T.M.B. Criteria to use a cane, that she "read his entire file","that she knew everything", and that he would be discharged from the infirmary. (See Grievance, Exhibit 1 Pg 107-109 and Medical Record, Exhibit 12 Pgs 107-109).

266. As to the claim in paragraph 265, Defendant Cheryl Egan permaneantly confiscated Plaintiff's cane he used as a walking aid, changed unrelated medical restrictions Plaintiff has had for years, and discharged the Plaintiff to general prison population again with open-bleeding wounds and a Posterior

Midline Fissure. Cheryl Egan's actions constituted Deliberate Indifference to a serious medical need and resulted in a purposeful and Wanton infliction of pain and suffering. (See Grievance, Exhibit 1 Pg 71-74 and Medical Records Exhibit 12 Pg 107-109--showing discharge and Exhibit 12 Pg 1--showing changes in restrictions).

267. As to the claim in paragraph 266, Plaintiff was immediatley placed in a transit cell, could hardly walk without the use of a cane, was denied gauze, tape, and dressing for wound care, was denied Sitz baths, and he remained confined 24/7 without proper medical care. (See Grievance, Exhibit 1 Pas 71-74 and Medical Record, Ex 12 Pg 107-109).

268. Upon information and Belief, Defendant Ernestine Julye M.D., as a primary care provider knew that Plaintiff would not be allowed to remain in the Beto I Infirmary before she made the transfer.

269. As to the claim in paragraph 268, the unwanted transfer to Beto I Unit belies any assertions made by T.D.C.J. and U.T.M.B. Defendants that Plaintiff did or could refuse any Unit transfer of any kind.

270. From Dec. 16th thru Dec. 20th, 2009, Plaintiff remained in a transit cell at the Beto I Unit, was intermittently provided medications, and he could hardly walk to and from the Infirmary without a cane using objects to help. Plaintiff continued to experience open-bleeding wounds, severe pain during and after bowel movements, and Flu-Like illness including aching, fatigue, and weakness. Plaintiff also continued to experience pain in left buttock, left leg, and the pain was shifting into his entire right leg in the form of cramping.

271. On Dec. 22nd, 2009, Plaintiff was transported to the Huntsville Unit and placed back into general prison population. Out of retaliation, Plaintiff was placed in a more restrictive five building instead of the free access area he was living in before going on medical chain (west building).

272. As to the claim in paragraph 271, Plaintiff has tried everything at his disposal to get moved back to the free access area and despite never having a disciplinary case in 6 years, he has been repeatedly refused.

273. As to the claim in paragraph 270, Plaintiff often has to wait hours to get in and out of his cell, must stand waiting to eat, shower, etc., and cannot promptly put his bandage back on after showers due to limited access.

274. From Dec. 23rd to Dec. 27th, 2009, Plaintiff began to experience severe pain in his right leg from being forced to walk without a cane and from failure to provide antibiotics. In addition to the cramping pains, the drainage from the open-bleeding wounds began to turn greenish/grey and started to smell like dead fish.

275. On Dec. 28th, 2009, Plaintiff woke up at 2 am with severe pains in his abdomen right above his stomach and after trying to ignore the pain, it only got worse. The pain spread into Plaintiff's chest and down both sides from his shoulder to his waist.

276. As to the claim in paragraph 275, Plaintiff began having trouble breathing

due to the severe pain and he contacted a ranking officer at 3 am to ask for permission to be taken to the Infirmary.

277. Upon Information and Belief, Plaintiff was becoming systemic from infection spreading from his wounds and his life was in serious danger.

278. As to the claim in paragraph 275-277, Plaintiff arrived at the Infirmary at 5 am and was seen by nurse Mark Varner who took vitals, stated that Plaintiff had "gas", and he refused to contact a provider at Plaintiff's request.

279. As to the claim in paragraph 278, Plaintiff attempted to explain that the drainage from his wounds was turning green and foul smelling, that the pain kept spreading, and that an infection was present.

280. As to the claim in paragraph 279, Plaintiff was told by Mark Varner that he had no fever so he had no infection. He then told Plaintiff, "leave and go back to your cell." Plaintiff challenges the Unit Policy of judging infection by fever alone.

281. At 9 am on Dec. 28th, 2009, Plaintiff returned to the Infirmary again seeking treatment for the infection spreading through his body. He was again refused any treatment due to the policy of judging infection by fever and which the Plaintiff had no fever.

282. As to the claim in paragraph 281, Plaintiff has never had a fever during the entire 2½ years his condition has continued to deteriorate. Judging Plaintiff's infection by fever alone is placing his life in serious danger.

283. At 11 am on Dec. 28th, 2009, Plaintiff fortunately had an existing layin to see physicians assistant, John Wang. Upon consultation, it was confirmed that Plaintiff had an infection noted by color and smell of the drainage. If the Plaintiff would not have had this layin, the infection would have most likely became fatal.

284. As to the claim in paragraph 283, John Wang ordered Bactrim to treat the infection and he ordered a blood test which was delayed until a month later on Jan 28, 2010.

285. Upon Information and Belief, the blood test was delayed and the clinic notes for the Dec. 28th, 2009 appointment were twice altered so that the Defendants could cover up the fact that Plaintiff became re-infected only 12 days after being placed back into general prison population. (See Electronic Signature on Medical Record--Exhibit 12 Pgs 110-111).

286. As to the claim in paragraph 284, the Bactrim slowly alleviated the pain in Plaintiff's chest, abdomen, and sides substantiating the pain was from the infection. The severe cramping in Plaintiff's right leg also subsided to a managable level.

287. On Jan 11th, 2010, Plaintiff was taken to Hospital Galveston where he was evaluated by resident physician Fisher and chief physician Jimminez instead of Valerie Bauer, the treating surgeon. At that time, Plaintiff was informed that a newly formed cavity was present inside his rectal area and that an exam under anesthia was necessary. (See Medical Record, Exhibit 11 Pgs 80-81).

288. As to the claim in paragraph 287, Plaintiff discussed having Valerie Bauer continuing treatment due to her board certification in the area and the over- all complexity of the case. Both resident physician and chief Jimminez agreed.

289. As to the claim in paragraph 288, Phone calls were made to contact Valerie Bauer, however, she was unavailable. Plaintiff was then informed that she would be contacted at a later date and that he would be rescheduled for the surgery.

290. On Jan 28th, 2010, the blood test ordered on Dec. 28th, 2009 was finally done. The results showed several abnormalities but they were never addressed. (See Blood Results, Exhibit 12 Pgs 112-113).

291. From Jan 28th, thru Mar. 28th, 2010, Plaintiff continued to suffer drainage requiring bandage changes twice daily, he had to remain on antibiotic to prevent re-occurring infection, and he continued to suffer in pain in his left buttock, right leg, and back. (See Affidavits of Plaintiff and Leslie Dean Reading, Exhibit 5 Pgs 1-4 and Exhibit 3 Pgs 1-2).

292. On Feb. 8th, 2010, Plaintiff provided a letter to Defendants from a Colon/ Rectal expert, Michael Snyder M.D. which stated that Plaintiff's complex condition requires treatment by a qualified, board certified Colon/Rectal Surgeon. (See Letter from Expert--Exhibit 6 Pg 3).

293. On Feb. 10th, 2010, Defendant Glenda Adams sent a letter to Plaintiff's father, Dennis Lempar, stating that surgeon Valerie Bauer declined to see the Plaintiff. Valerie Bauer ultimately refused Plaintiff the treatment that she herself stated that he required. (See Letter from Defendant Adams--Exhibit 8 Pg 8)(See also Post-Op Reports stating additional treatment needed--Exhibit 11 Pgs 6-8 and 18-19).

294. Upon Information and Belief, Valerie Bauer is refusing to see the Plaintiff to avoid liability of Unit Medical Staff refusing to follow her orders, re- sulting in failed surgeries. She has also referred Plaintiff to an outside expert which T.D.C.J. and U.T.M.B. Defendants have refused to arrange. (See Referral to Expert---Medical Record--Exhibit 11 Pg 14)(See also Surgeons orders--Medical Records ordering Sitz baths and bandage 3 times per day-- Ehxibit 11 Pg 4).

295. On March 14, 2010, Plaintiff was refused a renewal of his diet card by D.A. Ruby despite hospital orders for a high fiber diet. Her actions were Deliber- ately Indifferent in refusing to follow orders of surgical specialists. (See Refusal---Medical Record--Exhibit 12 Pg 115 and Grievance Response stating to continue high fiber diet--Exhibit 1 Pg 78-79) (Grievances Pending).

296. On March 29th, 2010, Plaintiff was transported to Hospital Galveston for what he thought was the surgical procedure recommended on Jan 11th, 2010 to have an exam to identify the newly formed cavity and to repair the yet untreated Posterior Midline Fissure.

297. As to the claim in paragraph 296, Plaintiff was seen only by a student Intern named "Sean" which knew nothing about Plaintiff's complex condition. He stated that Valerie Bauer M.D. was unavailable and that nobody knew the Plaintiff was comming. (unable to obtain record until discovery).

298. As to the claim in paragraph 297, Plaintiff was denied any surgical treatment for the newly formed cavity, the open-bleeding wounds, or the Posterior Mid-Line Fissure all resulting from an untreated M.R.S.A. Staph Infection. This refusal to provide necessary treatment constitutes Deliberate Indifference to a serious medical need causing unnecessary pain and suffering as well as the continued deterioration of Plaintiff's condition. (See Grievance--Exhibit 1 Pgs 78-79).

299. As to the claim in paragraph 298, Plaintiff was ordered to continue Sitz Baths which he was never provided due to refusal of Defendants to provide them. The order also stated that Plaintiff should remain on antibiotic which will not cure his condition but only prolong it. (See Grievance--Exhibit 1 Pgs 75-79).

300. From March 30th thru April 14th, 2010, Plaintiff was confined to a medical transit cell at the Bryd Unit 24/7 and was refused transportation back to the Huntsville Unit just blocks away. Plaintiff was unable to go to recreation, use the phones, go to commissary, and he was denied access to his legal materials. (See Grievance Worksheet---Exhibit 1 Pg 77)(Grievances still Pending).

301. Upon Information and Belief, the 24/7 confinement was used as a form of punishment for requiring medical treatment and is often used as a tactic to deter offenders from seeking medical care.

302. On May 12th, 2010, Defendant D.A. Ruby, denied Plaintiff the Sitz Baths that surgical staff ordered on March 29, 2010. She had ordered the Pan in April 2010 but refused to let Plaintiff have it stating that "Sitz Baths are not needed." (See Medical Record--Exhibit 12 Pg 116--requesting Sitz Pan)(See also Grievance--Exhibit 1 Pg 75-76--Step 2 still pending).

303. As to the claim in paragraph 302, Plaintiff's condition had not changed since his return from the Hospital and D.A. Ruby's actions were Deliberately Indifferent to a serious medical need. Plaintiff wrote a Grievance that was returned by Defendant Robert Dalecki stating that unit providers do not have to follow orders of Hospital Galveston. Plaintiff then wrote a Step 2 that is still pending. (See Grievance--Exhibit 1 Pgs 75-76).

304. On June 11th, 2010, Plaintiff began experiencing severe pain in his back, hip, and right leg appearing to be from infection. Plaintiff spoke to Defendant D.A. Ruby to get antibiotic changed, however, she refused. She failed to acknowledge the relationship of the pain with drainage and instead said she would refer Plaintiff to an Ortho Clinic.

305. From June 11th, 2010 thru July 14th, 2010, Plaintiff continued to suffer the severe pain in his lower back, right hip, and his right leg that prevented him from standing more than a few minutes or walking more than a couple hundred yards without stopping. Despite repeated requests for help, nothing was ordered to alleviate the severe pain and Plaintiff's symptoms went ignored.

306. On July 14th, 2010, Plaintiff spoke to a fill-In Provider by the name of Betty Williams M.D. Ms. Williams understood the need to change antibiotics and she prescribed Doxycycline.

307. As to the claim in paragraph 306, the Doxycycline has at times provided some temporary relief but has not alleviated the often severe pains in Plaintiff's Right Hip, Right Leg, and Lower Back.

308. Currently, Plaintiff continues to suffer severe pain without any adequate relief, has open bleeding wounds that have been draining for over two (2) years, has an untreated Posterior Midline Fissure, has an unexplored and unknown cavity noted on Jan. 11th, 2010, and he has continued symptoms of infection. (See Medical Drawing depicting condition----Exhibit 11 Pgs 80-81 and Post-Op Reports----Exhibit 11 Pgs 6-8 and 18-19)(See also Affidavits of Plaintiff, Mark Ladish, and Leslie Dean Reading---Exhibit 5 Pgs 1-4, Exhibit 4 Pgs 1-2, and Exhibit 3 Pgs 1-2 Respectively).

309. As to the claim in paragraph 308, at no time has a wound culture indicated that Plaintiff's infection has been erradicated. Defendants refuse any of the available diagnostic testing procedures to monitor whether or not the wounds are still tunneling or if the internal damage is being contained.

310. As to the claim in paragraph 308, Plaintiff's pain consists of local pain from the wound on his left buttock, pain inside his rectal area from the fissure, pain outside the rectal area from the external opening associated with the fissure, and severe burning and cramping in his lower back and right leg. Plaintiff is currently unable to stand more than a few minutes or walk more than a couple of hundred yards without stopping.

311. As to the claim in paragraph 310, the intensity of Plaintiff's pain is associated with the amount of drainage escaping or being trapped and failure of Defendants to provide Sitz Baths only compound this suffering. Plaintiff has recently, as of June 2010, started experiencing weakness, numbness, and tingeling in his lower extremeties which is more pronounced in his right leg.

312. Upon information and Belief, Plaintiff's condition is further deteriorating as symptoms are similar to nerve damage as noted in another similar case where a prisoner became paralyzed when M.R.S.A. Staph infected his spine. (See News Article---Exhibit 10 Pg 6).

313. As to the claim in paragraph 308, Plaintiff's wounds consist of the original constantly draining wound on his left buttock, a newer wound associated with the untreated fissure that opens and closes intermittently, and the internal fissure itself which also bleeds intermittently. (See---Medical Record--Exhibit 11 Pgs 80-81).

314. As to the claim in paragraph 308, Plaintiff's flu-like symptoms include swollen glands under his chin that have remained swollen for two years, aching in his lower body, weakness, and fatigue. (See Medical Record--Exhibit 11 Pgs 45-47).

315. Plaintiff has been unable to sit comfortably for over 2½ years and is forced to sit on hard metalic objects without a cushion. Defendants have refused to provide a cushion out of retaliation and harrassment for past grievances. (See --Medical Record refusing Donut Cushion--Exhibit 12 Pg 92).

316. Plaintiff has suffered severe emotional distress from the continued failure to provide necessary treatment, the continued harrassment and retaliation, the never ending pain, being forced to perform his own wound care and bandage changes for the last 8 months, and from being forced to stay on antibiotic just to stay alive. (See Affidavit of Plaintiff--Exhibit 5 Pgs 1-4).

317. As to the claim in paragraph 316, extended use of antibiotics is unhealthy, causing unnecessary organ damage, and will eventually lead to immunity from them.

-34-

318. T.D.C.J. and U.T.M.B. Defendants continue to retaliate and harrass Plaintiff by denying him a cane to use as a walking aid, denying any cushion to sit on, denying medical showers, denying any adequate pain relief, denying a dietcard to get high fiber ordered by surgical specialists, denying ordered sitz baths, and keeping him in a nasty cell with paint peeling from the walls everywhere.

319. T.D.C.J. and U.T.M.B. Defendants continue to refuse to transport Plaintiff to the specialist in which he was referred by U.T.M.B. surgical staff, they have refused any further treatment to repair the open-bleeding wounds or fissure, they have refused in writing to allow Plaintiff to be treated by a board cert-ified colon/rectal surgeon, they have repeatedly refused to follow orders of surgical staff treating Plaintiff, and they keep him in general prison popula-tion to suffer day after day. (See Letters from officials---Exhibit 8 Pgs 1-11 with Pg 8 noting refusal of Dr. Bauer to provide any treatment and Pg 9--discussing no treatment and sitz baths being refused).

320. As to the claim in paragraph 319, refusal of Defendants to provide treatment to resolve Plaintiff's condition is a wanton infliction of pain and suffering and is Deliberately Indifferent to Plaintiff's serious medical needs.

### B. Causes of Action

### COUNT I

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th amendments to the U.S. Constitution when Defendants were Deliberately Indifferent in providing standard acceptable medical treatment for an M.R.S.A. staph infection and subsequent abcess resulting in a yet unrepaired condition.**

321. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

322. Defendants Ernestine Julye and Charles Nagel violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Delib-erate Indifference in refusing to provide hospitalization for a tunneling M.R.S.A. Staph infection that progressed into a yet unrepaired condition and created extensive internal damage.

323. Defendants Ernestine Julye and Charles Nagel violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Delib-erate Indifference in refusing to provide a referral to a specialist result-ing in the formation of an abcess that ruptured into a yet unrepaired open-draining wound and created extensive internal damage.

324. Defendants Ernestine Julye and Charles Nagel violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Delib-erate Indifference in refusing to provide standard acceptable pain relief and antibiotics necessary to control tunneling of the M.R.S.A. Staph infect-ion and prevent unnecessary suffering.

325. Defendant Charles Nagel violated Plaintiff's Eignth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in refusing to provide antibiotics to control the M.R.S.A. Staph infection even after receiving two cultures showing M.R.S.A. Staph was still present.

-35-

326. Defendant Carolyn Hicks violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in refusing to allow Plaintiff to see a doctor resulting in the rupture of a life threatening abcess.

327. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief Plaintiff seeks.

## COUNT II

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution when Defendants refused to provide the expedited surgical care ordered by U.T.M.B. physicians resulting in extensive internal damage and excessive scarring.**

328. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

329. Defendants Brad Livingston, Owen Murray, Glenda Adams, Sonie Mangum, Ernestine Julye, and Charles Nagel violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by refusing to take action necessary to ensure Plaintiff received the necessary surgical treatment even after they were individually notified by US Mail, I-60's, and Grievances. Their inaction was Deliberately Indifferent to a serious medical need.

330. Defendant's Owen Murray and Allen Hightower violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they were Deliberately Indifferent in refusing to address the systemic failure in providing surgical treatment that they both were personally aware of and made numerous press releases regarding.

331. Defendant Sonie Mangum violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in refusing to take any action upon Step 1 review to ensure the ordered treatment was provided and when she falsified numerous Step 1 responses to excuse the failed care.

332. Defendants Myra Walker and Guy Smith violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in failing to take any action upon Step 2 review to ensure the ordered surgical treatment was provided. Instead both Defendants provided canned responses in order to circumvent the Grievance process and excuse the failed care.

333. Defendant Dennis Gore violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when he refused to provide the ordered and expedited surgical treatment when Plaintiff was finally taken to the Hospital. His inaction was not mere negligence, but was a Deliberate Indifference to a Serious medical need.

334. Defendant Brad Livingston violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when he failed to address the systemic

failure regarding the inability of Hospital Galveston to provide surgery the Plaintiff required. Plaintiff seeks Injunctive relief from Brad Livingston.

335. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which Plaintiff seeks.

<u>COUNT III</u>

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. constituiton when Defendants refused to provide bandage changes resulting in unnecessary pain and suffering from the inability to contain drainage from open-bleeding wounds.**

336. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

337. Defendants Ernestine Julye, Charles Nagel, and Sonie Mangum violated the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide bandage changes or supplies for 6 days during a State-Wide lockdown in Oct. 2008. Their conduct was not mere negligence, it was a Deliberate Indifference to a serious medical need in which they were all personally aware of.

338. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in entering an order on Feb. 3rd, 2009 changing Plaintiff's bandage changes to every 2 to 3 days based on only the expense of supplies. She knew Plaintiff's drainage and showering required at least daily changes resulting in a wanton infliction of pain and suffering.

339. Defendant Tsung-Lin Roger Tsai violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from his Deliberate Indifference in discharging Plaintiff to an area where he could not get ordered bandage changes directly after surgery.

340. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in refusing bandage changes or supplies from May 8th through May 11th, 2009 while Plaintiff was held in a holding cell at Hospital Galveston despite valid orders.

341. Defendant Martin Oakley violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from his Deliberate Indifference in refusing to provide doctor ordered bandage changes on July 14th and 27th , 2009 despite valid orders.

342. Defendant Lester Findley violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from his Deliberate Indifference in refusing to provide doctor ordered bandage changes on July 28th and 29th, 2009 and when he sexually harrassed the Plaintiff on one of the occassions.

343. Defendants are continuing to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference

in forcing Plaintiff to perform his own wound care and bandage changes on a wound that he cannot even see without a mirror. Their actions are resulting in a wanton infliction of pain and suffering.

344. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which Plaintiff seeks.

<u>COUNT IV</u>

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution from the failure of Defendants to follow the orders from surgical specialists rendering surgeries a failure.**

345. Plaintiff Incorporates paragraphs 1 through 320 as though they were stated fully herein.

346. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment on April 16th, 2009 when she refused to provide wound care 3 times a day as ordered by surgical specialists and when she forced her method of treatment upon Plaintiff using security. Her actions were not mere negligence, they were a Deliberate Indifference to a serious medical need resulting in a failed surgery.

347. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment on April 16th, 2009 when she refused to allow Plaintiff the sitz baths ordered by surgical specialists and when she forced Plaintiff to throw his Hospital provided sitz bath pan in the trash. Her actions were not mere negligence, they were a Deliberate Indifference to a serious medical need resulting in a failed surgery.

348. Defendant Katherine Pearson violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in refusing to follow orders of the surgical specialists when she entered an order on Aug 18th, 2009 to only change Plaintiff's bandage twice a week instead of twice daily as ordered. Her actions resulted in unnecessary pain and suffering.

349. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when she again refused to follow the orders of surgical specialists on Aug 19, 2009 following a second surgery. She entered an order to provide wound care only once daliy instead of twice daily. Her actions were not mere negligence but were Deliberately Indifferent to a serious medical need resulting in a second failed surgery.

350. Defendants Ernestine Julye and D.A. Ruby continue to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in refusing to provide the sitz baths that were again ordered by surgical specialists on March 29, 2009. Their actions are not mere negligence, they are a Deliberate Indifference to a serious medical need resulting in a wanton infliction of pain and suffering.

351. Defendant D.A. Ruby violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in refusing to renew Plaintiff's Diet card necessary to eat a higher fiber intake as ordered by surgical staff.

352. Defendant Robert Dalecki violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in refusing to take any action upon Step 1 review to ensure Plaintiff received proper care ordered by surgical specialists. His canned responses excusing the failed care were Deliberately Indifferent to a serious medical need resulting in a wanton infliction of continued pain and suffering.

353. Defendant Jamie Williams violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in refusing to take any action upon Step 1 review to ensure Plaintiff received care ordered by surgical specialists. Her canned responses excusing failed care were Deliberately Indifferent to a serious medical need resulting in a wanton infliction of continued pain and suffering.

354. Defendants Myra Walker and Guy Smith violated Palintiff's Eighth Amendment right to be free from cruel and unusual punishment in refusing to take any action upon Step 2 review to ensure Plaintiff received the proper care ordered by surgical specialists. Their canned responses excusing failed care were Deliberately Indifferent to a serious medical need resulting in a wanton infliction of continued pain and suffering.

355. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grant the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT V

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution from the Deliberate Indifference in Defendants refusing to provide any current treatment to repair open-bleeding wounds and a Posterior Midline fissure.**

356. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

357. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in refusing to provide any current standard acceptable medical care to treat Plaintiff's open-bleeding wounds or his fissure. Refusal was made on March 29, 2010.

358. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they refused in writing to allow Plaintiff to be treated by a board certified colon/rectal surgeon recommended by outside expert. Their action/inaction is not mere negligence, it is a Deliberate Indifference to a serious medical need, due to progression from prior failed medical care, and a wanton infliction of pain and suffering.

367. Defendant Katherine Pearson violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in using Silver Nitrate on Plaintiff's wound on Dec. 7th, 2009 without the expertise to do so. Her actions resulted in continued damage and a wanton infliction of pain and suffering.

368. Defendant D.A. Ruby violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in her refusal to provide ordered sitz baths outside the realm of her expertise. Her continued actions in overriding the orders of surgical specialists is a wanton infliction of pain and suffering.

369. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

### COUNT VII

**The Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution for the Deliberate Indifference in failure to timely provide medication ordered from Hospital Galveston and for the failure to implement a timely renewal process.**

370. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

371. Defendants Ernestine Julye and Katherine Pearson violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in refusing to provide pain medication as ordered on April 6th-14th, 2009 and again on Aug. 17th-18th and 22nd-23rd, 2009. Their actions were a Wanton and purposeful infliction of serious pain and suffering directly after both surgeries.

372. Defendants Ernestine Julye and Katherine Pearson violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in failing to provide timely renewals of Plaintiff's medications over and over again. Their actions in making Plaintiff suffer days at a time were not mere negligence, they were a purposeful and Wanton infliction of pain and suffering that could have easily been prevented.

373. Defendant Jamie Williams violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in refusing to take any action upon Step 1 Review to ensure Plaintiff received ordered medications and renewals in a timely manner. Her actions in stating providers can do whatever they want and her canned responses excusing failed care, resulted in unnecessary pain and suffering.

374. Defendants Myra Walker and Guy Smith violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in refusing to take any action upon Step 2 Review to ensure Plaintiff received ordered medications and renewals in a timely manner. Their inaction and canned responses to excuse failed care resulted in unnecessary pain

transfer which is not even allowed by T.D.C.J. rules and that he refused treatment in which he did not. Their actions in falsifying documentation is not only criminal, it resulted in a Wanton infliction of pain and suffering.

383. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT IX

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution from the Deliberate Indifference in forcing Plaintiff to work in a textile mill with an open-bleeding wound and a posterior midline fissure.**

384. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

385. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in forcing Plaintiff to work in a textile mill with an open-bleeding wound and a posterior midline fissure. Her failure to provide the necessary and previously ordered medical work restrictions, resulted in a purposeful and Wanton infliction of pain and suffering.

386. Defendant Jamie Williams violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in refusing to take any action upon Step 1 Review to ensure Plaintiff received the proper and previously ordered medical work restrictions. Her false response, used to excuse failed care, resulted in a purposeful and Wanton infliction of pain and suffering.

387. Defendants Myra Walker and Guy Smith violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in refusing to take any action upon Step 2 Review to ensure Plaintiff received the proper and previously ordered medical work restrictions. Their canned responses excusing failed care, resulted in a purposeful and Wanton infliction of pain and suffering.

388. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grant the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT X

**The Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution for the Deliberate Indifference in Defendants lodging a "campaign of harrassment" and retaliating for filing Grievances.**

-43-

389. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

390. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punsihment from the Deliberate Indifference in lodging a "campaign of Harrassment" on Dec. 24th, 2008 depriving the Plaintiff any meaningful sleep. Their actions were a Wanton infliction of pain and suffering.

391. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from the Deliberate Indifference in lodging a "Campaign of Harrassment" on Feb. 3rd, 2009 denying Plaintiff daily bandage changes necessary to absorb drainage. Her actions were a purposeful and Wanton infliction of pain and suffering.

392. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" where they kept Plaintiff confined 24/7 from Feb. 14th through Mar. 1st, 2009. Their actions were a purposeful and Wanton infliction of pain and suffering.

393. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" where they kept Plaintiff confined 24/7 in an Ad-Seg cell between March 30th and April 1st, 2009. Their actions were a purposeful and Wanton infliction of pain and suffering.

394. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" where they discharged Plaintiff back to an Ad-Seg cell directly after surgery on April 4th, 2009, where he could not get ordered care. Their actions were a purposeful and Wanton infliction of pain and suffering.

395. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" when they forced Plaintiff to ride a bus with hard plastic seats on April 6th, 2009, with no cushions or pain medications. Their actions in forcing Plaintiff to sit directly on his wound after surgery were a purposeful and Wanton infliction of pain and suffering.

396. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" when they confined Plaintiff to an Ad-Seg cell 24/7 on Estelle Unit directly after surgery between April 6th and 14th, 2009. Their actions in placing Plaintiff in an Ad-Seg cell instead of the Regional Medical Facility, was a purposeful and Wanton infliction of pain and suffering especially since Plaintiff could not receive ordered care in the Ad-Seg cell.

397. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in lodging a "Campaign of Harrassment" on April 16th, 2009 when she verbally abused the Plaintiff in front of nursing staff and when she forced her method of treatment upon the Plaintiff using security. Her actions were a purposeful and Wanton infliction of pain and suffering.

398. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in lodging a "Campaign of Harrassment" between July 2 and July 7th, 2009, when she told Plaintiff he would never heal, when she discharged Plaintiff to general prison population with an open-bleeding wound and fissure, when she failed to provide necessary restrictions, orders, or follow-up, and when she had Plaintiff assigned to the Estelle Unit where he had no fan in the middle of July. Her actions were a Wanton infliction of pain and suffering along with mental anguish.

399. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in lodging a "Campaign of Harrassment" when, out of retaliation, she initiated a unit medical transfer sending Plaintiff to another unit in an entirely different region of T.D.C.J. and away from his family. She knew Plaintiff did not meet the "U.T.M.B. Criteria" for the Beto I infirmary and her actions were a purposeful and wanton infliction of pain and suffering along with mental anguish.

400. Defendant Cheryl Egan violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in lodging a "Campaign of Harrassment" on Dec. 16th, 2009, when she discharged Plaintiff to general prison population again with two open-bleeding wounds and the untreated Posterior Midline Fissure and when she took Plaintiff's cane away. Her actions were a purposeful and Wanton infliction of pain and suffering.

401. Defendants continue to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" started on March 29th, 2010 to deny Plaintiff any reasonably acceptable standard medical care to alleviate his condition. Their actions are resulting in a continued and Wanton infliction of pain and suffering.

402. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in lodging a "Campaign of Harrassment" between Mar. 30th and April 14th, 2010, when they again held Plaintiff confined 24/7 in a transit cell at the Byrd Unit in retaliation for past grievances. Their actions resulted in a purposeful and Wanton infliction of pain and suffering.

403. Defendant D.A. Ruby is continuing to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in lodging a "Campaign of Harrassment" where she is refusing to follow treatment orders of surgical specialists and forcing Plaintiff to suffer. Her actions are resulting in a purposeful and Wanton infliction of pain and suffering.

404. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT XI

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution from the Deliberate Indifference in forcing Plaintiff to sit directly on his surgical wound after surgery for a 3½ hour bus ride with no cushions or pain relief.**

405. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

406. Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from their Deliberate Indifference in failing to provide any cushions or pain relief before forcing Plaintiff to ride a bus with hard plastic seats for 3½ hours. Their actions/inactions caused tremendous suffering and were a purposeful and Wanton infliction of pain and suffering.

407. Defendant Donna Clement violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in chaining Plaintiff to another offender preventing him from sitting in a manner where he could protect his wound, refusing to contact medical staff for passes or cushions, and forcing Plaintiff on the bus. Her actions/inactions caused tremendous suffering and were a purposeful and Wanton infliction of pain and suffering.

408. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT XII

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments to the U.S. Constitution from the Deliberate Infifference in Defendants verbally and physically abusing him during bandage changes.**

409. Plaintiff incorporate paragraphs 1 through 320 as though they were stated fully herein.

410. Defendant Lisa Horton violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in verbally and physically abusing the Plaintiff during a doctor ordered bandage change on Sept. 22nd, 2009. Her actions in jabbing Plaintiff's wounds causing bruising was a purposeful and Wanton infliction of pain and suffering.

411. Defendant Lester Findley violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from his Deliberate Indifference in sexually harrassing Plaintiff on July 29th, 2009, while refusing to perform a doctor ordered bandage change. His actions in turning Plaintiff's medical procedure into a sexual encounter resulted in serious mental anguish as well as a Wanton infliction of pain and suffering.

412. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs

described herein. Plaintiff has been and will continue to be irreparably in-
jured by the conduct of the Defendants unless this Court grant the Declara-
tory and Injunctive relief which the Plaintiff seeks.

## COUNT XIII

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th
and 14th Amendments to the U.S. Constitution from the Deliberate Indifference
resulting from Defendants twice discharging him into general prison population
with open-bleeding wounds and an untreated posterior midline Fissure.**

413. Plaintiff incorporates paragraphs 1 through 320 as though they were stated
fully herein.

414. Defendant Ernestine Julye violated Plaintiff's Eighth Amendment right to be
free from cruel and unusual punishment from her Deliberate Indifference in
discharging Plaintiff to general prison population on July 7th, 2009 to suff-
er with an open-bleeding wound and an untreated posterior midline fissure.
Her actions in stating Plaintiff would never heal and placing him into an
environment where he could not get proper care, resulted in a Wanton inflict-
ion of pain and suffering.

415. Defendant Cheryl Egan violated Plaintiff's Eighth Amendment right to be free
from cruel and unusual punishment from her Deliberate Indifference in dis-
charging Plaintiff to general prison population on Dec. 16th, 2009 to suffer
with two open-bleeding wounds and a Posterior Midline Fissure. Her actions
in placing Plaintiff in an environment where he could not get proper care and
where he got an infection days later, resulted in a purposeful and Wanton in-
fliction of pain and suffering.

416. Defendant Jamie Williams violated Plaintiff's Eighth Amendment right to be
free from cruel and unusual punishment from her Deliberate Indifference in
refusing to take any action upon Step 1 review to ensure Plaintiff was kept
in an area where he could receive proper care necessary to alleviate his con-
dition. Her inaction resulted in a Wanton infliction of pain and suffering.

417. Defendants Myra Walker and Guy Smith violated Plaintiff's Eighth Amendment
right to be free from cruel and unusual punishment from their Deliberate In-
difference in refusing to take any action upon Step 2 Review to ensure that
Plaintiff was kept in an area where he would receive treatment necessary to
alleviate his condition. Their inaction resulted in a Wanton infliction of
continued pain and suffering.

418. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs
described herein. Plaintiff has been and will continue to be irreparably in-
jured by the conduct of the Defendants unless this Court grants the Declara-
tory and injunctive relief which the Plaintiff seeks.

## COUNT XIV

**Plaintiff was subjected to cruel and unusual punishment in violation of the 8th**

**and 14th Amendments to the U.S. Constitution for the Deliberate Indifference in taking away the cane Plaintiff used as a walking aid.**

419. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

420. Defendant Cheryl Egan violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment from her Deliberate Indifference in taking away the cane Plaintiff used as a walking aid due to the pain from his condition. Her actions resulted in a purposeful and Wanton infliction of pain and suffering.

421. Defendants Myra Walker and Guy Smith violated Plaintiff's Eighth Amendment right to be free  from cruel and unusual punishment from their Deliberate Indifference in refusing to take any action upon Step 2 review to assist the Plaintiff in getting his cane returned. Their action/inaction resulted in a Wanton infliction of continued pain and suffering.

422. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

## COUNT XV

**Plaintiff was denied Due Process under the 14th Amendment to the U.S. Constitution when Defendants refused to process Grievances.**

423. Plaintiff incorporates paragraphs 1 through 320 as though they were stated fully herein.

424. Defendants violated Plaintiff's Fourteenth Amendment right to Due Process by depriving the Plaintiff of an opportunity to aggrieve the failure of Ernestine Julye to follow orders of surgical specialists on April 16th, 2009.

425. Plaintiff has no plain, adequate, or complete remedy at law to redress wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the Declaratory and Injunctive relief which the Plaintiff seeks.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** PREMISES CONSIDERED, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

426. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

427. A Preliminary and Permanent injunction ordering Defendants to provide specialized medical treatment necessary to alleviate Plaintiff's condition, ordering the Defendants to take Plaintiff to the specialist in Houston that he was referred to, ordering Defendants to provide continued diagnostic testing necessary to monitor his condition, and ordering that Plaintiff receive proper post

-48-

surgery care including sitz baths or that he be immediately released from the custody of T.D.C.J.

428. Compensatory damages in the amount of $50,000.00 against each Defendant, jointly and severally.

429. Punitive damages in the amount of $25,000.00 against Defendants Horton, Clement, and Julye, jointly and severally.

430. A Jury Trial on all issues triable by a jury.

431. Plaintiff's cost and attorney fees in this suit.

432. Any additional relief that this Court or the Jury deems just, proper, and equitable.

## VII. GENERAL BACKGROUND INFO

433. Plaintiff goes by Donald Conrad Lempar and has no aliases.

434. Plaintiff's TDCJ # is 1284244 and he has no other numbers.

## VIII. SANCTIONS

435. Plaintiff has never been sanctioned by any Court as a result of any lawsuit.

436. Plaintiff has never been warned or notified that sanctions could be imposed.

## IX. JURY DEMAND

437. Plaintiff demands a trial by jury.

Respectfully Submitted,

Donald Lempar # 1284244
TDCJ-Huntsville Unit
815 12th Street
Huntsville, Texas  77348

Executed on  Aug 16th, 2010

## PLAINTIFF's DECLARATIONS:

1. I declare under penalty of perjury that all facts presented in this complaint and attachments thereto are true and correct.
2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so could result in the dismissal of this lawsuit.
3. I understand that I must exhaust all available administrative remedies prior to filing this suit.

4. I understand I am prohibited from bringing an In Forma Pauperis lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assesses by the Court, which shall be deducted in accordance with the law from my inmate account by my custodian until the filing fee is paid.

Signed this ____16th____ day of ___August___, 2010.

_David Lempar_
Donald Lempar---Affiant

## CERTIFICATE OF SERVICE AND MAILING:

I, Donald Lempar, being presently imprisoned in T.D.C.J., Huntsville Unit,

Walker County, Texas and under penalty of perjury, do hereby affirm that I

have delivered a copy of this complaint to the prison mailroom officials,

first-class postage prepaid, for mailing to:

Clerk
United States District Court
Southern Division of Texas
Post Office Box 61010
Houston, Texas  77208

Executed on this ___16th___ day of ___August___, 2010.

_David Lempar_
Donald Lempar----Affiant

Donald Lempar # 1284244
TDCJ-Huntsville Unit
815 12th Street
Huntsville. Texas 77348
August 16, 2010

Clerk
United States District Court
Southern District of Texas
Post Office Box 61010
Houston, Texas 77208

RE: Filing of Complaint for money damages and Injunction.

Dear Clerk:

   **Please find enclosed Plaintiff's Complaint for money damages** and Injunction,
Application to proceed informa pauperis, Preliminary Injunction, Motion for the
appointment of counsel, list of exhibits, and the exhibits in support of both the
Complaint and request for Preliminary Injunction. Please file these with the Court
and set them for submission. I have enclosed an additional copy of this cover
letter to be file stamped and returned as notice of filing status. I have also
enclosed a self-addressed postage prepaid envelope for your return correspondence.

   Thank you for your prompt attention in this matter.

                                        Sincerely,

                                        Donald Lempar

CC: File







**EMS**

*EXPRESS MAIL*
UNITED STATES POSTAL SERVICE

Mailing Box
*For Domestic and International Use*

U.S. POSTAGE
SAN ANTONIO TX
78218
AUG 10
AMOUNT
$41.40
00783907-1-1
1007

**EXTREMELY URGENT**
*Please Rush To Addressee*

When used internationally affix customs declarations (PS Form 2976, or 2976A).

United States Courts
Southern District of Texas
FILED
AUG 19 2010
Clerk of Court

EXPRESS MAIL
UNITED STATES POSTAL SERVICE

Addressee Copy
Post Office To Addressee

TO: Clerk
United States District Court
Southern District of Texas
Post Office Box 610/0
Houston, Texas 77208

FROM: Dennis Lumpee
c/o David Lumpee
Boerne, TX 78006

EH786281653US

Place Mail

FOR PICKUP OR TRACKING
Visit WWW.USPS.com
Call 1-800-222-1811